WXYZ, INC., and Michigan Association of Broadcasters, Plaintiffs-Appellees,

v.

Michael J. HAND, District Judge, 47th Judicial District Court of the State of Michigan, Defendant-Appellant.

No. 79–1162.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 18, 1980.

Decided Aug. 19, 1981.

John B. Kiefer, Kiefer, Allen & Cavanagh, Detroit, Mich., for defendant-appellant.

John B. Kemp, Kemp, Klein, Endelman & Beer, Raymond L. Morrow, Southfield, Mich., for plaintiffs-appellees.

---

* Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

1. The order stated:
 This case having come before the Court on defendant's motion of suppression of the file, the Court being fully advised in the premises:

Before WEICK and BOYCE F. MARTIN, Jr., Circuit Judges, and NIXON,* District Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Michael J. Hand, a District Judge in the 47th Judicial District of the State of Michigan, appeals from the District Court's grant of partial summary judgment in favor of plaintiffs-appellees WXYZ, Inc. and the Michigan Association of Broadcasters. The court held that a Michigan statute and a suppression order issued by Judge Hand pursuant to that statute violated the First, Fifth, and Fourteenth Amendments to the United States Constitution. *WXYZ, Inc. v. Hand*, 463 F.Supp. 1070 (E.D.Mich.1979). We affirm.

On September 2, 1977, a Catholic priest from Farmington, Michigan was arrested and charged with second degree criminal sexual conduct, in violation of MCLA § 750.520c. On the day of the arrest, the priest's attorney applied to Judge Hand for a suppression order under MCLA § 750.-520k, which provides:

> Upon the request of the counsel or the victim or actor in a prosecution under sections 520b to 520g [1] the magistrate before whom any person is brought on a charge of having committed an offense under sections 520b to 520g shall order that the names of the victim and actor and details of the alleged offense be suppressed until such time as the actor is arraigned on the information, the charge is dismissed, or the case is otherwise concluded, whichever occurs first.

---

[1] Sections 750.520b to 750.520g.

Judge Hand immediately issued the order.[1] In order to clear up the ensuing confusion

> IT IS HEREBY ORDERED that the names of the victims, the actor, and the details of the alleged offense be suppressed until such time as the actor may be arraigned on the information in Circuit Court or the charge dismissed or otherwise concluded pursuant to MCLA 750.520k.

concerning the applicability of the order, Judge Hand met with representatives of the press at 9:00 that evening. He explained that the order applied to everyone, and that violators would be subject to the contempt power of the court. Nevertheless, on its 11:00 p. m. newscast that night, WXYZ–TV reported an account of the incident, including the name of the priest. Plaintiffs then instituted this action to restrain Judge Hand from enforcing the suppression order and to have the statute declared unconstitutional.

On September 27, 1977, the District Court entered a preliminary injunction. After its subsequent denial of Judge Hand's motion to dismiss for failure to state a sufficient claim, the court certified questions to the Michigan Supreme Court concerning the applicability of the suppression order to the news media and the validity of the statute under the Michigan Constitution.[2] The Michigan Supreme Court declined to respond, expressing the view that the issues raised federal questions.[3] Appellees then moved in the District Court for a partial summary judgment. The District Court found the statute invalid on its face and declared that orders issued pursuant to it were void. The motion for summary judgment for a permanent injunction was denied pending a factual determination of its necessity in light of the court's decision. 463 F.Supp. at 1072. Judge Hand subsequently indicated, in response to an interrogatory, that he intended to initiate contempt proceedings against the appellees notwithstanding the District Court's order.

As a result, appellees' renewed motion for partial summary judgment for a permanent injunction was granted.[4]

On appeal, Judge Hand argues that the District Court erred in refusing to grant his motion to dismiss. He contends that both *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and the *Pullman* doctrine, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), require the federal courts to abstain from adjudicating this case. He further argues that the suppression order is neither a prior restraint nor constitutionally invalid. Finally, Judge Hand asserts that even if we uphold the District Court's ruling on the suppression order, we should reverse its determination that the statute is facially unconstitutional.

I. Abstention.

The Supreme Court discussed the issue of abstention thoroughly and authoritatively in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976):

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances

---

**2.** The certified questions were:

 1. Is Section 750.520k of the Michigan Compiled Laws construed so that suppression orders issued by a magistrate pursuant thereto apply to news media?

 2. If the statute is so construed, does it violate the provisions of Sections 5 and 17, Article 1, Michigan Constitution of 1963? 463 F.Supp. at 1073.

**3.** The court's order stated:

 On order of the Court, the certified questions are considered, and the Court respectfully declines to respond to the questions because (i) the interpretation of the Michigan statute is so closely intertwined with a federal constitutional question that it will be nec-

essary to consider the federal question in order to decide the state law question and (ii) the state constitutional questions parallel federal constitutional questions, and therefore the issues cannot be decided entirely as matters of state law under the procedure provided in GCR 1963, 792.2.

 Kavanagh, C. J., Fitzgerald and Moody, Jr., JJ., would grant the request.

**4.** Judge Hand was permanently enjoined from taking any action to find appellees in contempt and from issuing any orders pursuant to MCLA § 750.520k without expressly qualifying such orders so that they do not apply to the news media.

where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189 [79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163] (1959). "[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 361 [71 S.Ct. 762, 774, 95 L.Ed. 1002] (1951) (Frankfurter, J., concurring in result). Our decisions have confined the circumstances appropriate for abstention to three general categories.

(a) Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co., supra* [360 U.S.] at 189 [79 S.Ct. at 1063]. See, *e. g., Lake Carriers Assn. v. MacMullan*, 406 U.S. 498 [92 S.Ct. 1749, 32 L.Ed.2d 257] (1972); *United Gas Pipeline Co. v. Ideal Cement Co.*, 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

\* \* \* \* \* \*

(c) Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) . . . .

*Id.* at 813–816, 96 S.Ct. at 1244–45.

 As it applies to this case, the abstention rule of *Younger v. Harris, supra*, and its progeny is clear. Lacking extraordinary circumstances, a federal court cannot enjoin a pending state criminal proceeding. *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980). Subsequent decisions have expanded the range of state proceedings to which the rule is applicable. See *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil nuisance action); *Moore v.*

*Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child abuse and custody proceedings); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings). However, when no state proceeding is pending, and considerations of equity, comity, and federalism are therefore diminished, a federal court may consider constitutional challenges to state statutes and grant declaratory and injunctive relief. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

 Judge Hand contends that because his suppression order is a vital prerequisite to a future criminal contempt proceeding, the order itself should be regarded as a pending criminal proceeding. He cites no case supporting this argument, which we find to be clearly without merit. Judge Hand's reliance on *Juidice v. Vail, supra*, is misplaced. That case involved a suit brought in federal court to enjoin, on constitutional grounds, the use of New York's statutory contempt procedures. Two appellees were held to have standing: Patrick Ward, who had been held in contempt but not yet imprisoned; and Joseph Rabasco, who had been issued a show cause order by the state court. The Supreme Court stated that "since their standing, unlike that of the plaintiff in *Steffel v. Thompson, supra*, is predicated on the existence of a pending, and not merely a threatened, proceeding, we deal with appellants' *Younger* contentions." 430 U.S. at 333, 97 S.Ct. at 1216. In the present case, neither a contempt order nor an order to show cause why appellees should not be held in contempt has issued. Michigan contempt proceedings are not pending, they are merely threatened. This genuine threat of prosecution is a prerequisite to appellees' standing to maintain this action. *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *Juidice v. Vail, supra*, 430 U.S. at 333, 97 S.Ct. at 1216; *Wooley v. Maynard, supra*, 430 U.S. at 710, 97 S.Ct. at 1432; *Doran v. Salem Inn, Inc.*, 422 U.S. 922,

930–31, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *Younger v. Harris, supra*, 401 U.S. at 42, 91 S.Ct. at 749. It does not, however, require us to consider Judge Hand's *Younger* contentions. *Steffel v. Thompson, supra*, 415 U.S. at 462, 94 S.Ct. at 1217.

Judge Hand's other argument for abstention is based on the so-called *Pullman* doctrine. The doctrine facilitates the avoidance of unnecessary federal court interference in important state functions, *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965), and spares federal courts unnecessary constitutional adjudication. *Harrison v. NAACP*, 360 U.S. 167, 176, 79 S.Ct. 1025, 1029, 3 L.Ed.2d 1152 (1959). Its underlying principle is that "federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." *Id.*

In *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), this doctrine was applied to an action which challenged certain unconstrued provisions of a Massachusetts statute governing consent requirements for performance of an abortion on an unmarried minor. A three-judge District Court enjoined the operation of those provisions. It held that the statute gave a veto power to the parents of minors seeking abortions, thereby violating the minors' Fourteenth Amendment right to due process of law. The appellants argued that the statute expressly provided that parental refusal of consent was not final, and that the statute could therefore be construed in a manner which protected the constitutional rights of minors. The Supreme Court agreed, stating that "It is sufficient that the statute is susceptible of the interpretation offered by the appellants, and we so find, and that such an interpretation would avoid or substantially modify the federal constitutional challenge to the statute, as it clearly would." 428 U.S. at 148, 96 S.Ct. at 2866. The court vacated the judgment of the District Court and remanded the case for certification of appropriate questions to the Supreme Judicial Court of Massachusetts. *Id.* at 151, 96 S.Ct. at 2868.

Judge Hand insists that MCLA § 750.520k is "tailor-made for 'judicial reconstruction'", Brief for Appellant at 41, and is susceptible of an interpretation which eliminates its constitutional infirmities. He further argues that the certification of questions by the District Court should be deemed a nullity because the District Court improperly "telegraphed" its position on the issue.[5] Presumably because of this allegedly irreparable damage to the certification option, we are urged to abstain and to trust in the competence of the Michigan courts to give the statute a constitutionally valid interpretation.

We reject Judge Hand's contentions for two reasons. First, the District Court, by certifying the appropriate questions to the Michigan Supreme Court, gave it the opportunity to attempt a construction of the statute which would avoid or substantially modify the constitutional issue. The argument that the certificate was tainted by the District Court's indication that Judge Hand's oral construction rendered the statute unconstitutional is unpersuasive. On the contrary, it would seem that if the "telegraphed" position of the District Court had any effect at all, it would have given the Michigan Supreme Court an incentive to proffer a saving construction.[6] Once the

---

5. The certificate stated, in pertinent part:

This Court is reluctant to interfere with the proper functioning of the Michigan judiciary; and the Court is reluctant to make a determination (*as is likely*) that the statute as orally construed by Judge Hand violates the Constitution of the United States, if the proper construction of the statute or a state constitutional determination makes such federal determination unnecessary. The issues must inevitably reoccur, and it is likely that the United States District Courts in Michigan will again be called upon to issue injunctions against state judges unless and until the issues are resolved. It is for these reasons that the Court certifies to the Michigan Supreme Court the following questions. (Emphasis added).

6. The record suggests that the potentially interested parties in Michigan, other than Judge Hand, are either not interested in saving the statute or do not think a constitutional con-

state court declined the opportunity to do so, the District Court properly decided the merits of plaintiffs' claim. *See United Services Life Insurance v. Delaney,* 358 F.2d 714 (5th Cir. 1966).

Second, we simply do not believe that this is a proper case for abstention. In the following section of this opinion, we hold that MCLA § 750.520k is unconstitutional on its face because it fails to provide for a judicial inquiry into the need for a suppression order. With respect to the contention that we should abstain in order to allow the Michigan courts an opportunity to construe the statute to require a hearing, we find instructive the Supreme Court's decision in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). That case concerned a challenge to a Wisconsin statute which authorized the prohibition of the sale or gift of liquor to individuals who, by reason of excessive drinking, created certain conditions or exhibited certain characteristics. The Court agreed with the three-judge District Court that the posting in retail liquor outlets of a notice forbidding the sale or gift of liquor to designated persons inflicts such a stigma that procedural due process requires notice and an opportunity to be heard. The court refused to abstain in order to give the Wisconsin courts an opportunity to construe the statute to require notice and a hearing. It stated:

> In the present case the Wisconsin Act does not contain any provision whatsoever for notice and hearing. There is no ambiguity in the state statute. There are no provisions which could fairly be taken to mean that notice and hearing might be given under some circumstances or under some construction but not under others. The Act on its face gives the chief of police the power to do what he did to the appellee. Hence the naked question, un-

complicated by an unresolved state law, is whether that Act on its face is unconstitutional. As we said in *Zwickler v. Koota,* 389 U.S. 241, 251 [88 S.Ct. 391, 397, 19 L.Ed.2d 444] abstention should not be ordered merely to await an attempt to vindicate the claim in a state court. *Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim. Id.,* at 250–251 [88 S.Ct. at 396–97].

*Id.* at 439, 91 S.Ct. at 511 (emphasis added). *See also Babbitt v. United Farm Workers of America, supra,* at 306, 99 S.Ct. at 2312; *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).

The terms of MCLA § 750.520k are unambiguous; they leave no room for a construction which would require judicial inquiry into the need for a suppression order in a given case. As a result, abstention is inappropriate notwithstanding the absence of an authoritative interpretation of the statute by the Michigan Supreme Court.

## II. The Constitutionality of the Suppression Order and MCLA § 750.520k.

Judge Hand contends that *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), is inapposite because in that case the First Amendment rights of the press were in conflict with an individual's right to a fair jury trial. He argues that the statute in issue here "serves a different and *far less speculative* social objective than the one considered in *Nebraska Press.*" Brief for Appellant at 38 (emphasis in original). That social objective is the protection of the privacy interests of the accused and the victims in sex offense prosecutions.

In one sense, Judge Hand is correct. There are significant differences in setting and purpose between the order in this case

---

struction is possible. The District Court invited Michigan's Attorney General and the Oakland County prosecutor to the hearing on plaintiffs' motion for a preliminary injunction and encouraged them to participate in the hearing. The Attorney General's Office failed to send a representative to the hearing. The Chief Ap-

pellate Counsel for the prosecutor's office appeared and stated: "In a nutshell, we believe the statute is unconstitutional and that the suppression order should not have been ordered." The prosecutor's office did not participate further in the proceedings.

and the orders entered in *Nebraska Press* and other prior restraint cases.[7] *See Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). However, "as to the underlying issue—the right of the press to be free from prior restraints on publication—those cases form the backdrop against which we must decide this case." *Nebraska Press Association*, supra, at 561–62, 96 S.Ct. at 2803–04.

■ In his brief, Judge Hand describes the adverse consequences which may result from the disclosure of information about sex offenses: increased psychological harm to the victims, to those accused, and to those convicted; the perpetuation of recidivism; and the impairment of rehabilitative processes. Even if we were to accept Judge Hand's assessment of the evils of such disclosures, however, we would affirm the District Court's invalidation of the order.

> [T]he First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result ... Thus, only governmental allegation and proof that publication must inevitably, directly and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order.

*New York Times Co., supra*, at 725–27, 91 S.Ct. at 2147–48 (Brennan, J., concurring) (footnote omitted). There is nothing in the record before us which shows that any of the adverse effects cited by Judge Hand would in fact result in this case. *Nebraska Press Association, supra*, at 569, 96 S.Ct. at 2807.

We need not decide whether the governmental interest asserted here could ever, under any circumstances, justify the imposition of a prior restraint, "one of the most extraordinary remedies known to our jurisprudence." *Id.* at 562, 96 S.Ct. at 2804. We simply agree with the District Court's determination that Judge Hand failed to overcome the heavy presumption against the constitutional validity of the suppression order.[8] *Organization for a Better Austin v. Keefe, supra*, 402 U.S. at 419, 91 S.Ct. at 1577.

■ We also affirm the District Court's conclusion that MCLA § 750.520k is unconstitutional on its face. Our decision on this issue does not turn on the fact that the statute mandates the issuance of a prior restraint, for "First Amendment protection reaches beyond prior restraints." *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 101, 99 S.Ct. 2667, 2670, 61 L.Ed.2d 399 (1979). Even if the statute provided only a penal sanction after the event of publication of information about alleged sex offenses, it would require "the highest form of state interest to sustain its validity." *Id.* at 102, 99 S.Ct. at 2670. In addition, the state must demonstrate that the punitive action is necessary to further the asserted stated interests.

Again, we need not decide whether Michigan's interest in protecting the privacy of alleged sex offenders and their victims is sufficient to justify the prohibition or punishment of truthful publication of names and events. We note, however, that in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court held that a rape victim could not recover civil damages against a newspaper for publishing her name—at least when that information was contained in official court records open to public inspection.

---

7. Contrary to Judge Hand's assertion, the suppression order is unquestionably a prior restraint. Its clear purpose is not to punish speech after the fact of publication, but rather to prohibit it outright. *See Nebraska Press Association v. Stuart, supra*, at 559, 96 S.Ct. at 2802.

8. Judge Hand argues that the suppression order does not act as a "gag" because it merely postpones the right to disclose the information. This argument is without merit. The burden on the state is not reduced by the temporary nature of the restraint. *Nebraska Press Association, supra*, at 559, 96 S.Ct. at 2802.

The Court also held, in *Smith v. Daily Mail Publishing Co., supra,* that West Virginia could not declare it a crime for a newspaper to publish the names of alleged youthful offenders without the written approval of the juvenile court. Concededly, the holding in *Cox Broadcasting* is narrow, and the *Smith* case did not involve the issue of privacy. However, even if MCLA § 750.-520k advances a sufficiently compelling state interest, the statute is fatally deficient in other respects.

Judge Hand concedes that the statute mandates entry of a suppression order upon proper application; no hearing in the state district court is required. Thus, MCLA § 750.520k represents a legislative determination that in every case involving certain sex offenses, there exists a sufficiently serious and imminent threat to the privacy interests of the persons involved to justify a suppression order. Deference to such legislative judgments is impossible when First Amendment rights are at stake. *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). If the scope of the freedom of speech and of the press were subject to legislative definition, "the function of the First Amendment as a check on legislative power would be nullified." *Id.* at 844, 98 S.Ct. at 1544. If a statute like this one is ever to pass constitutional muster, it must require the state court to go behind the legislative determination and examine for itself the likelihood that disclosure would result in an invasion of privacy, and whether the degree of likelihood is sufficient to justify a suppression order or criminal sanction. *Id. See also Smith, supra,* 443 U.S. at 109, 99 S.Ct. at 2674 (Harlan, J., concurring). This would be true even if the suppression order did not apply to the news media. *See, e. g. In Re Halkin,* 598 F.2d 176, 191 (D.C.Cir.1979); *Hirschkop v. Snead,* 594 F.2d 356, 367–68 (4th Cir. 1979). *See also Gulf Oil Company v. Bernard,* —— U.S. ——, ——, 101 S.Ct. 2193, 2201, 68 L.Ed.2d 693 (1981). Because

**9.** It is also clear that the suppression order mandated by the statute is too broad. The state interest asserted here can never justify the suppression of the "details of the alleged

MCLA § 750.520k contemplates no such judicial examination, but rather mandates the issuance of a suppression order merely upon application, the statute is unconstitutional on its face.[9]

The judgment of the District Court is affirmed.

offense." *See Smith v. Daily Mail, supra,* 443 U.S. at 108, 99 S.Ct. at 2673 (Rehnquist, J., concurring); *In Re Halkin, supra,* at 193.