**CONNECTICUT MAGAZINE, A DIVISION OF ARC COMMUNICATIONS, INC., d/b/a Communications International, Plaintiff,**

v.

**Howard J. MORAGHAN, Judge of the Superior Court, et al., Defendants.**

Civ. No. B–87–766 (TFGD).

United States District Court,
D. Connecticut.

Dec. 24, 1987.

Alan Neigher, Byelas & Neigher, Westport, Conn., for plaintiff.

Joseph I. Lieberman, Atty. Gen. of State of Conn., Carl I. Schuman, Asst. Atty. Gen. of State of Conn., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

By motion filed November 23, 1987, plaintiff Connecticut Magazine seeks a preliminary injunction pursuant to 42 U.S.C. § 1983 enjoining the enforcement of an order prohibiting the attorneys in a state criminal matter from making statements to the media. Defendants subsequently filed a motion to dismiss the instant action. On December 17, 1987, the Court heard oral argument on both motions. For the reasons set forth below, plaintiff's motion for preliminary injunction is GRANTED, and defendants' motion to dismiss is DENIED.

## BACKGROUND

Plaintiff challenges the constitutionality of a so-called "gag order" issued in a widely publicized criminal matter pending in the Superior Court of Connecticut. Judge Moraghan, the defendant in the instant case,[1] is currently presiding over *State of Connecticut v. Richard Crafts*, No. CR3–59235, a state prosecution involving the particularly

1. Plaintiff originally included as a defendant the Honorable Aaron Ment in his official capacity as the Chief Court Administrator of the State of Connecticut. The action has been dismissed with regard to Judge Ment.

2. Although not reflected in the record, the gag order was apparently entered pursuant to Conn. Prac.Book § 894. *See* Affidavit of Judge Mora-

grisly allegation that the accused, after dismembering the body of his wife with a chain saw, placed her head and limbs through a wood-chipping machine. Not surprisingly, the case has attracted some substantial attention in the media.

On October 20, 1987, Judge Moraghan issued from the bench the following order:

Before we begin any motions, gentlemen, as I told you in chambers, this Court intends and is now entering a gag order, so to speak, against you. No attorney involved in the prosecution or the defense of this case, under order of the Court and under pain of the contempt powers the Court has, will be permitted to make any public statements to any member of the media about this trial while it is in progress. That means that from today on until such time as the case terminates and by that the Court means until a verdict is returned.

Plaintiff's Exh. A, at 3. The order was issued *sua sponte* and without a hearing.[2] Although counsel for the defendant in the underlying case noted his "aversion" for such orders at the time of the imposition of the order, *see id.* at 4, neither the prosecution nor the defense in the *Crafts* case challenges the order here.

Shortly thereafter, on October 23, 1987, Connecticut Magazine sought to file with the Superior Court a motion to intervene in the *Crafts* case and a motion to dissolve or modify the gag order. However, the assistant clerk of the state court returned to plaintiff's counsel the motions and the accompanying memorandum without their having been filed. The motions were returned with a letter dated October 23, 1987 noting that "[t]he Court has indicated that 'Connecticut Magazine' lacks standing in the case of *State of CT vs. Crafts* and it

ghan, at 3. Section 894 provides that "[w]henever appropriate in the light of the issues of the case or its notoriety, the judicial authority may direct the parties, their counsel and the witnesses not to make extrajudicial statements relating to the case or the issues in the case for dissemination by any means of public communication."

will not entertain the motion." Plaintiff's Exh. D.

On October 29, 1987, Connecticut Magazine submitted to the Chief Justice of the Connecticut Supreme Court an application for certification of an appeal involving an issue of substantial public interest pursuant to Conn.Gen.Stat. § 52–265a and Conn. Prac.Book § 4177.[3] Plaintiff's counsel was notified on November 3, 1987 that the application was denied. Plaintiff subsequently filed its motion for preliminary injunction with this Court.

## DISCUSSION

### I. *Standing*

■ Plaintiff Connecticut Magazine is a monthly publication with a general circulation in the State of Connecticut. It is not a party to the underlying action of *State v. Crafts*. Moreover, Judge Moraghan's order is not specifically directed at Connecticut Magazine, but rather was aimed at the lawyers involved in the case. The issue arises then of whether, as a nonparty not subject to the gag order, Connecticut Magazine has standing to challenge the order.[4]

Connecticut Magazine does not have, nor does it appear to claim to have, standing as a nonparty not subject to the gag order to assert the first amendment rights of those who are subject to the order. *United States v. Simon*, 664 F.Supp. 780, 785 (S.D. N.Y.1987). However, a nonparty has standing to challenge a gag order that impinges on its independent right to gather news protected by the first amendment. *Journal Publishing Co. v. Meachum*, 801 F.2d 1233, 1235 (10th Cir.1986); *CBS Inc. v. Young*, 522 F.2d 234, 237–38 (6th Cir. 1975); *Simon*, 664 F.Supp. at 786–88. As the Supreme Court has suggested, "without some protection for seeking out the news, freedom of the press could be evis-

cerated." *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). *See also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 583, 100 S.Ct. 2814, 2830, 65 L.Ed.2d 973 (1980) ("[A]rbitrary interference with access to important information is an abridgement of the freedoms of speech and of the press protected by the First Amendment."); *CBS, Inc. v. Young*, 522 F.2d at 238 ("The protected right to publish the news would be of little value in the absence of sources from which to obtain it."). Because the gag order impairs its ability to gather news and thus implicates its first amendment rights, Connecticut Magazine has standing to challenge the order despite not being a party or a subject of the order in the underlying action.

### II. *Abstention*

■ Defendant in the instant action maintains that this Court is prohibited from enjoining the order of the Superior Court by the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court in *Younger* directed that a federal court must abstain from enjoining pending state criminal prosecutions except under extraordinary circumstances. *Id.* at 44–46, 53, 91 S.Ct. at 750–51, 754. Underlying the abstention doctrine of *Younger* is the notion that, in the memorable phrase of Justice Black, "Our Federalism" requires that a proper respect be accorded the vital and legitimate functions of the states. *Id.* at 44, 91 S.Ct. at 750. Because of these concerns of federalism that permeate our system of government, a federal court must avoid interference with criminal proceedings pending in the state courts. *See also Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718,

---

3. Conn.Gen.Stat. § 52–265a provides in pertinent part that "any party to an action who is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision."

4. Judge Moraghan apparently concluded that Connecticut Magazine lacked standing to challenge the gag order in the underlying action. *See* Plaintiff's Exh. D (Letter from Clerk of Superior Court dated October 23, 1987). That conclusion, of course, does not bind this Court.

2722–23, 91 L.Ed.2d 512 (1986); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–06, 95 S.Ct. 1200, 1208–09, 43 L.Ed.2d 482 (1975).

Defendant argues that abstention is appropriate in this case because the *Younger* doctrine applies to nonparties as well as to parties seeking injunctive relief in the federal courts, and because the gag order issued by Judge Moraghan is essential to the pending state court proceedings in *Crafts*. This Court does not concur in defendant's assessment. No state prosecution is currently pending against Connecticut Magazine. *See WXYZ, Inc. v. Hand*, 658 F.2d 420, 423 (6th Cir.1981). Moreover, the interests asserted by Connecticut Magazine are entirely independent of those of the parties in the state action. Connecticut Magazine seeks only to secure its federal constitutional right of access to sources of newsworthy information, and not to challenge the propriety of the state prosecution itself. Because the interests of Connecticut Magazine and the parties to the state criminal proceedings are by no means intertwined or even connected, abstention is not required. *See Hicks v. Miranda*, 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975) (*Younger* abstention appropriate when party seeking federal relief had substantial stake in outcome of state criminal proceedings and the interests of party seeking federal relief and those of state criminal defendants were clearly intertwined if not identical).

Although the Court recognizes the interest of the state court of ensuring a fair trial and of protecting the sixth amendment rights of the criminal defendant, *see Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), the Court cannot agree that the challenged gag order is so essential to the state court proceedings such that an injunction against the order would amount to an injunction of the criminal prosecution itself. Abstention under *Younger* is appropriate when a federal court acts to frustrate a pending state court proceeding, by injunction, declaratory judgment or similar mechanism, such that the proceedings are halted or mooted. *See, e.g., Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (injunction of contempt proceedings sought); *Huffman*, 420 U.S. 592, 95 S.Ct. 1200 (declaratory and injunctive relief sought challenging the enforcement of state court judgment under state nuisance statute); *Younger*, 401 U.S. 37, 91 S.Ct. 746 (injunction of state criminal prosecution sought). An injunction issuing from this Court against the enforcement of the gag order in *Crafts* would not prohibit in any way the pending prosecution itself from going forward. Any interference with the state proceedings would be minimal and therefore cannot justify the eschewal of the Court's jurisdiction to protect the federal constitutional rights of the plaintiff.

■ Even assuming for the moment that the rule of *Younger v. Harris* would apply, Connecticut Magazine has exhausted its available avenues of state judicial review. The *Younger* doctrine is premised on the assumption that the pending state court proceedings will provide an adequate forum for the litigation of any federal issues that may arise in those proceedings. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 435, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982). Accordingly, *Younger* and its progeny have required that, before a federal court intervenes in such proceedings, state judicial remedies be exhausted. *Huffman*, 420 U.S. at 608, 609 n. 21, 95 S.Ct. at 1210 n. 21 (1975).

Connecticut Magazine has done all it reasonably could to obtain state court review of its claim. In fact, the opportunity to seek a state judicial remedy was all but cut off to it. Judge Moraghan would not allow Connecticut Magazine to file its motion to intervene in the *Crafts* case to challenge the propriety of the gag order. Thereafter, Connecticut Magazine sought an expedited appeal pursuant to Conn.Gen.Stat. § 52–265a, but the application for certification of the appeal was denied.

Defendant argues that additional avenues of appeal were available to Connecticut Magazine and that the failure to pursue those courses amounts to a procedural default. In particular, defendant suggests

that Connecticut Magazine should have sought an appeal pursuant to Conn.Gen. Stat. § 52–263 and Conn.Prac.Book § 4000 or a writ of error pursuant to Conn.Gen. Stat. § 52–273 and Conn.Prac.Book § 4143 to contest the refusal to allow it to file its motion to intervene. Defendant is correct in noting that under Connecticut law a denial of a motion to intervene is a final judgment for purposes of appeal if the party seeking intervention has a colorable claim to intervention as a matter of right. *Common Condominium Associates, Inc. v. Common Associates,* 5 Conn.App. 288, 497 A.2d 780, 782 (1985). However, in the instant case, Connecticut Magazine's motion to intervene was not denied; rather, it was not allowed to file the motion, and no ruling was entered on the record as to the motion. Connecticut Magazine, by first attempting to intervene in *Crafts* and then by seeking an expedited appeal, exhausted all state judicial remedies it could reasonably be expected to pursue, particularly in light of need for an expeditious resolution of its claim. *See Capital Cities Media, Inc. v. Toole,* 463 U.S. 1303, 1304, 103 S.Ct. 3524, 3525, 77 L.Ed.2d 1284 (Brennan, Circuit Justice 1983) ("It is clear that even a short-lived 'gag' order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect."). Therefore, assuming that it was necessary, Connecticut Magazine fulfilled any requirement that state court remedies be exhausted, and this Court need not abstain from ruling on plaintiff's motion for preliminary injunction.

### III. *The Constitutionality of the Order*

■ The right to gather news falls within the protections of the first amendment. *CBS Inc. v. Young,* 522 F.2d 234, 238 (6th Cir.1975); *United States v. Simon,* 664 F.Supp. 780, 786–88 (S.D.N.Y. 1987); *see also Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed. 2d 626 (1972). However, that right is not absolute or unqualified. Nor is the media granted any right greater than that of the general public under the first amendment.

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609, 98 S.Ct. 1306, 1317, 55 L.Ed.2d 570 (1978); *Pell v. Procunier,* 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed. 2d 495 (1974). At the very least, the right to gather news includes the opportunity to attend and report on a criminal trial. *See Radio & Television News Ass'n v. U.S. District Court,* 781 F.2d 1443, 1447 (9th Cir.1986). Although it does not include a right to compel responses to questions, *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965); *Simon,* 664 F.Supp. at 787; the right to gather news does encompass the right of access to trial participants, including counsel, to observe and listen to whatever they may be willing to say. *Journal Publishing Co. v. Mechem,* 801 F.2d 1233, 1236 (10th Cir. 1986); *CBS Inc. v. Young,* 522 F.2d at 238; *Simon,* 664 F.Supp. at 787–88. *But see Radio & Television News Ass'n,* 781 F.2d at 1447 (suggesting that the right to gather news extends no further than attending and observing the trial).

■ An order prohibiting extrajudicial comments by counsel constitutes a prior restraint on the right to gather news and derivatively on publication. *Journal Publishing Co.,* 801 F.2d at 1236. Even though the gag order issued by Judge Moraghan does not directly restrict the speech or publication of Connecticut Magazine, it does impede its ability to gather news by listening to and reporting on the out-of-court statements of counsel in the *Crafts* case. Prior restraints are of particular concern under the first amendment, and therefore must be approached with special caution. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

The Court recognizes that the balancing of the first amendment rights of the parties and nonparties against the sixth amendment rights of criminal defendants can be difficult, especially in highly publicized cases. A court is faced with the often arduous task of ensuring that the accused receives a fair trial. A properly

crafted order prohibiting extrajudicial statements by counsel, in the proper circumstances, can be an appropriate mechanism to protect the right to a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 361, 86 S.Ct. 1507, 1521, 16 L.Ed.2d 600 (1966). Nevertheless, because it represents a prior restraint on a protected first amendment right, such an order must meet the requirements of the first amendment.

When entering an order that constitutes a prior restraint, a court must consider "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger." *Nebraska Press Ass'n*, 427 U.S. at 562, 96 S.Ct. at 2804; *accord Simon*, 664 F.Supp. at 791. Moreover, the order should be narrowly tailored to prohibit only those statements that may impair the fairness of the criminal proceedings. *United States v. Ford*, 830 F.2d 596, 600 (6th Cir.1987); *Journal Publishing Co.*, 801 F.2d at 1236; *In Re Express–News Corp.*, 695 F.2d 807, 810 (5th Cir.1982); *CBS Inc. v. Young*, 522 F.2d at 238; *see also Nebraska Press Ass'n*, 427 U.S. at 562, 566–67, 96 S.Ct. at 2804, 2806; *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 183, 89 S.Ct. 347, 352, 21 L.Ed.2d 325 (1968). Before reviewing Judge Moraghan's order under these standards, the Court notes at the outset that the order was issued without a hearing and without findings entered on the record with regard to any of these factors.[5]

■ Despite the lack of contemporaneous findings on the record regarding the nature and extent of pretrial publicity, the present record supports a conclusion that the fairness and integrity of the *Crafts* trial was threatened to some degree by the media coverage of the case. In fact, Connecticut Magazine admits that the case has already received widespread notoriety. If there is a reasonable likelihood that prejudicial news coverage threatens to impair the right to a fair trial, a Court must take appropriate measures in response to the publicity. *Sheppard*, 384 U.S. at 363, 86 S.Ct. at 1522. Given the nature of the allegations and the extensive media coverage already of the *Crafts* case, the state court could "reasonably conclude, based on common human experience, that publicity might impair the defendant's right to a fair trial." *Nebraska Press Ass'n*, 427 U.S. at 563, 96 S.Ct. at 2804.

The conclusion that the potential for prejudicial publicity exists alone is not enough to justify the imposition of a gag order, however. Other alternatives to and the effectiveness of the gag order must be examined. *Simon*, 664 F.Supp. at 793–94. Judge Moraghan made no such findings on the record. Nor does Judge Moraghan's affidavit reflect that those factors were considered before the order was entered. Absent such findings, the present record cannot support the conclusion that a less restrictive measure was not available to the state court or that the order imposed would effectively mitigate prejudicial media coverage so as to justify the prior restraint. *Nebraska Press Ass'n*, 427 U.S. at 565, 567–69, 96 S.Ct. at 2805, 2806–07.

■ Beyond the failure of the state court to make the requisite findings necessary to impose a prior restraint, the challenged gag order is unconstitutionally overbroad as it is presently drafted. The order prohibits counsel in the *Crafts* case from making *any* statement about the case to the media, rather than prohibiting only those statements that raise a "reasonable likelihood of prejudicial impact." *Simon*, 664 F.Supp. at 791. Because the injury

---

**5.** Attached to defendant's motion to dismiss is an affidavit by Judge Moraghan, which the defendant claims serves as a substitute for findings on the record made at the time of the imposition of the gag order. The purpose of requiring findings is not simply to create a record for a reviewing court; rather, requiring findings ensures that a court considers the factors prescribed by the constitutional standard before the contemplated action is taken. An after-the-fact affidavit, even assuming as the Court of course does here that the affidavit is truthful, cannot fulfill this purpose as would contemporaneous findings. *See Nebraska Press Ass'n*, 427 U.S. at 569–70, 96 S.Ct. at 2807–08.

resulting from a prior restraint to a first amendment right is largely irreparable, a court must attempt to minimize the restrictive effect of a prior restraint by proscribing only those communications that represent the danger sought to be avoided. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982); *Carroll,* 393 U.S. at 183; *Ford,* 830 F.2d at 600. Having failed to narrowly tailor its order, the state court violated the demands of the first amendment in issuing the gag order.

Accordingly, defendant's motion to dismiss is DENIED, and plaintiff's motion for preliminary injunction is GRANTED such that Judge Moraghan shall be enjoined beginning on January 4, 1988 or upon the impaneling of the jury, whichever comes first, from enforcing the gag order entered in *State v. Crafts.* This ruling shall not prevent the issuance of a new order that complies in full with the constitutional requirements as set forth above.

SO ORDERED.