Leo **TSOKALAS, Brian Garnett, and Post Newsweek Stations–Connecticut, Inc.**

v.

**Joseph J. PURTILL.**

**Civ. No. 2 91 CV 00028 (TEC).**

United States District Court,
D. Connecticut.

Feb. 5, 1991.

---

Eliot B. Gersten, Andrea A. Hewitt, Gersten & Clifford, Hartford, Conn., for plaintiffs.

William F. Dow, III, William M. Bloss, Jacobs, Grudberg, Belt & Dow, New Haven, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

CLARIE, Senior District Judge.

By motion dated January 14, 1991, the plaintiffs, Leo Tsokalas, Brian Garnett, and Post Newsweek Stations, seek a preliminary injunction enjoining the confiscation of a sketch drawn by the plaintiff Tsokalas, and enjoining a court order prohibiting publication of likenesses of jurors in the state criminal prosecution of Joe Lomax, *State v. Lomax.* The defendant has filed a motion to dismiss the instant action on the basis of the *Younger* abstention doctrine, and a

1. The plaintiff originally included as defendants in this action the Honorable Aaron Ment, in his official capacity as the Chief Court Administra-

memorandum in opposition to the plaintiffs' motion for a preliminary injunction.

## BACKGROUND

The plaintiffs challenge the constitutionality of the confiscation of the plaintiff Tsokalas' drawing of the jury in the *Lomax* criminal prosecution, *State v. Lomax,* CR87–53847. Lomax is facing his third trial on the charge of murdering Kara Laczynski, the previous trials having resulted in hung juries. All three trials have received considerable publicity in Connecticut. The defendant in this action,[1] Judge Purtill, is currently presiding over the third trial. The plaintiff, Leo Tsokalas ("Tsokalas"), is a free-lance artist contracted by the plaintiff Post Newsweek Stations–Connecticut Inc. ("Channel 3") to attend the trial and sketch the courtroom scene for publication.

After he learned that courtroom sketches of jurors were being drawn, Judge Purtill prohibited the publishing of any likenesses of the jury and confiscated the plaintiff Tsokalas' drawing. The judge stated:

[T]o safeguard really the integrity of this trial, I'm going to order that those sketches of the jury remain in the courtroom; they'll be handed over to the sheriff and will be surrendered or given to you at the end of the case, probably.

(See Memorandum in Support of Motion to Dismiss, Defendant's Transcript Excerpt at p. 2). He articulated that the basis for his decision was to preserve the integrity of the trial and reduce the potential for pressure on the jurors in order to safeguard against a third mistrial. He stated:

[I]f you have the pictures of the jury going out to the general public, then these people are going to be under all kinds of pressure, no matter where they go they're going to run into people who will recognize them and are going to start talking. They'll have no control over the thing.... My job is to safeguard the integrity of this trial [and] if you publish the likeness[es] of the jurors,

tor of the State of Connecticut, and John Guadiana, the sheriff who confiscated the drawing. The actions against them have been dismissed.

then you are just destroying that and subjecting them to all kinds of pressures. (Transcript Excerpt at p. 3). The Judge then refined his order to permit courtroom sketches to be published if the likenesses of the jurors were not discernible. (Transcript Excerpt at p. 4). Two artists' sketches were determined to be unobjectionable as individual jurors could not be identified. However, the judge determined that the plaintiff's drawing did not fall into this category as the identities of the jurors are particularly discernible.

The following day the Court allowed the plaintiffs standing to challenge the order and heard argument. Judge Purtill declined to reverse his previous ruling.[2] Three days later, on January 11, 1991, the plaintiffs commenced this action in this Court. On January 23, 1991, the plaintiffs' expedited appeal to the Connecticut Supreme Court pursuant to C.G.S. § 52–265a was dismissed.

DISCUSSION

■ The defendant contends that this Court should abstain from entertaining the plaintiffs' motion for a preliminary injunction pursuant to the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. In *Younger*, the Supreme Court instructed that a federal district court cannot enjoin an ongoing state criminal prosecution, except in limited circumstances. *Id.* at 44–46, 91 S.Ct. at 750–51. The question facing this Court is whether the doctrine would preclude this Court from granting injunctive or declaratory relief in favor of one who claims to be aggrieved by an order of the state court, but who is not a party to the suit and is without at least immediate appellate recourse in the state courts.

The Supreme Court in *Hicks v. Miranda*, 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975) teaches that *Younger* abstention is warranted when the federal plaintiff has a substantial stake in the outcome of the state criminal prosecution and the interests of the state criminal defendant and the federal plaintiff are closely related. The Court explained that "[t]he rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference by federal courts,' [citation omitted], particularly where the party to the federal case may fully litigate his claim before the state court." *Id.* at 349, 95 S.Ct. at 2292.

It is apparent that the instant plaintiffs' situation does not meet the requirements for *Younger* abstention. The plaintiffs are not parties in the ongoing *Lomax* prosecution. *See WXYZ, Inc. v. Hand*, 658 F.2d 420, 423 (6th Cir.1981). In addition, the nature of the claims asserted by the plaintiffs are wholly unrelated to the subject matter of the state criminal prosecution. The plaintiffs seek to litigate First Amendment issues in the federal forum. Any such proceeding would not impermissibly interfere with, or disrupt, the state prosecution. *See Martin v. Merola*, 532 F.2d 191, 195 (2d Cir.1976).

The plaintiff relies on Judge Daly's decision in *Connecticut Magazine v. Moraghan*, 676 F.Supp. 38 (D.Conn.1987), in support of its claim that *Younger* abstention is not warranted here. The Court finds *Connecticut Magazine* dispositive as to the abstention question presented. In *Connecticut Magazine*, Judge Moraghan was presiding over *State of Connecticut v. Crafts*, No. CR3–59235, a state prosecution which attracted wide-spread attention. After the commencement of the trial Judge Moraghan issued a "gag order" from the bench precluding any attorney involved with the case from making any statements

---

**2.** Judge Purtill reiterated his rationale for his ruling: "[T]he great problem with this case, this is the third time this case has come up for trial.... What the great concern is that if we have a good likeness of those jurors being put out on television, and your artist does an excellent job, an outstanding rendition, you could tell exactly who these people are.... [T]hen people who have nothing to do with the case, who don't even know them but who would recognize them in restaurants and in the general course of business, would confront them with the fact that they are jurors on this case, which is really a high-profile case, I don't want to run the risk of having to declare a mistrial halfway through the case because our jurors are under pressure like that."

to the media.[3] Three days later, Connecticut Magazine sought to file with the Superior Court a motion to intervene in the case and a motion to dissolve, or modify, the gag order. The Court refused to entertain the motions for the reason that Connecticut Magazine lacked standing in the case. Shortly thereafter, Connecticut Magazine filed with the Connecticut Supreme Court an application for certification of appeal pursuant to C.G.S. § 52–265a. That application was denied. Connecticut Magazine then filed suit in federal district court seeking a preliminary injunction prohibiting the enforcement of the order. The Court held that *Younger* abstention was not warranted, for two reasons. First, the Court determined the doctrine did not apply as Connecticut Magazine was not a party to the criminal prosecution and the interests asserted by them were "entirely independent of those of the parties in the state action." *Connecticut Magazine*, 676 F.Supp. at 41. The Court reasoned that:

> "An injunction issuing from this Court against the enforcement of the gag order in *Crafts* would not prohibit in any way the pending prosecution itself from going forward. Any interference with the state proceedings would be minimal and therefore cannot justify the eschewal of the Court's jurisdiction to protect the federal constitutional rights of the plaintiff." *Id.* at 41.

Second, the Court reasoned that even if *Younger* was applicable, the federal plaintiff had reasonably exhausted its available avenues of state appellate review by seeking an expedited appeal pursuant ot § 52–265a of the General Statutes. *Id.* at 41–2. *Connecticut Magazine* is factually analogous to this case and its reasoning is persuasive. The plaintiffs are not parties

to the state prosecution and were granted only limited standing to present their claims. Similarly, the plaintiffs expedited appeal pursuant to § 52–265a was dismissed for the same reason that the plaintiffs are not parties to the state criminal prosecution. As such, the plaintiffs are without sufficient recourse in the state appellate courts to conclude that they have exhausted their state remedies for *Younger* purposes.

The defendant contends that the Court should be guided by the Second Circuit Court of Appeals decision in *Gold v. State of Connecticut*, 531 F.2d 91, 92 (2d Cir. 1976). However, the defendant's heavy reliance on *Gold* is misplaced. In *Gold*, a federal district court was upheld when it abstained from the merits of a claim brought by a defendant in a state criminal prosecution who alleged that a "gag order" issued by a state trial court judge unconstitutionally violated the First Amendment.[4] The defendant's analogy to *Gold* is flawed in two respects. First, and most importantly, the federal plaintiff in *Gold* was also the criminal defendant in the state prosecution, thereby squarely triggering the abstention principles of *Younger*. Second, the federal plaintiff made no effort to seek state appellate review of its constitutional claims. Both of these factors are absent here. Based on these differences, *Gold* does not require abstention in the instant action.

Based on the foregoing, this Court need not abstain from ruling on the plaintiffs' motion for a preliminary injunction.

A plaintiff seeking preliminary injunctive relief in this District must demonstrate:

(a) irreparable harm, and

(b) either:

**3.** The order read as follows:
No attorney involved in the prosecution or the defense of this case, under order of the Court, and under pain of the contempt powers the Court has, will be permitted to make any public statements to any member of the media about this trial while it is in progress.

**4.** The court in *Gold* focused on the circumstances when a criminal state court defendant may seek federal review of his First Amendment claims: "Under certain circumstances ...

federal review may be available where such orders affect First Amendment rights not capable of vindication through direct appeal from conviction. [Citing] *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975). Such review would be proper, however, only where it is clear that there are no state court remedies available to resolve the First Amendment questions. *See Wallace v. Kern*, 520 F.2d 400, 406–07 (2d Cir.1975)."

(1) likelihood of success on the merits, or

(2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Eng v. Smith*, 849 F.2d 80, 82–83 (2d Cir. 1988); *American Postal Workers Union v. United States Postal Service*, 766 F.2d 715, 721 (2d Cir.1985), *cert. denied* 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986), *quoting Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

The defendant does not contest the plaintiffs' assertion that they have suffered irreparable harm by the confiscation of the sketch and the related order. In advance of their argument that they are likely to succeed on the merits, the plaintiffs allege that the defendant's order is violative of the free press guarantee of the First Amendment.

█ It is axiomatic that the First Amendment protects the right of the press to attend trial proceedings. *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982); *United States v. Yonkers Bd. of Ed.*, 747 F.2d 111, 112–13 (2d Cir.1984). The Supreme Court has previously explained that "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). However, the rights of the public and the press are not absolute, and not without bounds. *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. at 2620. "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965); *see e.g. United States v. Gurney*, 558 F.2d 1202, 1208 (5th Cir.1977).

█ Certain concerns of other rights sometimes exist which outweigh the concerns of the public. "Values other than openness and the free flow of information also inhere in our system of justice, including the preservation of the defendant's right to a fair trial and the protection of the privacy of others." *United States v. Gerena*, 703 F.Supp. 211, 213 (D.Conn. 1988). In determining whether the rights of the press and public must be subordinated, the Court must balance the accused's Sixth Amendment right to a fair trial before an impartial jury and individual juror's right to personal privacy against the freedom of the press. *United States v. Doherty*, 675 F.Supp. 719, 721 (D.Mass.1987).

█ A significant obligation rests with the trial judge to oversee and direct the course of the proceedings to ensure that the accused receives a fair trial. *United States v. Gurney*, 558 F.2d at 1209. The Supreme Court in *Sheppard v. Maxwell*, 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 explained these concerns of the trial court:

Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused.... The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside influences.

*See also United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 102, 104 (5th Cir.1974). It must also be considered that a trial judge enjoys broad discretion with matters that concern the every day activities of his or her court in order to ensure a fair, orderly trial. *United States v. Gurney*, 558 F.2d at 1209. "Within this discretion ... the district judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations." *Id.* at 1210. In fact, a Judicial Committee has recommended that in highly publicized cases "no photographs be taken or sketch made of any juror within the environs of

the court." Report of the Committee on the Operation of the Jury System on the "Free Press–Fair Trial" Issue, 45 F.R.D. 391, 410–411 (1968).

Nevertheless, the plaintiffs allege that the judge's order should be scrutinized under the "strict scrutiny" standard of review, and under such scrutiny, it must fail. The Court does not agree. The order did not prohibit the plaintiffs from exercising any right heretofore acknowledged under the First Amendment access right. *See U.S. v. Yonkers Bd. of Educ.* 747 F.2d at 113–14. *Yonkers* is illustrative of the fact that strict scrutiny is not required. In *Yonkers*, a newspaper reporter challenged a local rule which barred the use of cassette tape recorders in the courtroom as violative of the First Amendment. In addressing whether such a rule should be viewed under strict scrutiny analysis, the Court held:

> Because [the rule] does not violate appellant's right of access and does not prohibit him from communicating any of what he observes to his readers, the Rule is simply a "time, place, and manner" restriction, which should not be subjected to strict scrutiny, but should be upheld if reasonable. [Citations omitted].

*Id.* at 114. Judge Purtill's order was narrowly tailored to prohibit only those sketches where the individual jury members were identifiable. It did not prohibit sketching of any other courtroom scene or interfere with the plaintiff's right to inform its readers of the developments of the proceedings. He did not limit the right of physical access to the press, limit the ability of the artist to draw general sketches of the courtroom or particular sketches of any of the participants, only identifiable sketches of the jury. The order does not impinge on the fundamental news dissemination processes of the press nor does it limit fair commentary on the proceedings.

In *KPNX Broadcasting Co. v. Arizona Supreme Court*, 459 U.S. 1302, 1308, 103 S.Ct. 584, 587, 74 L.Ed.2d 498 (1982), Justice Rehnquist commented on the role of juror sketches in aiding the reporter in covering trials:

> I would think that of all conceivable reportorial messages that could be conveyed by reporters or artists watching such trials, one of the least necessary to appreciate the significance of the trial would be individual juror sketches.

The Supreme Court in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581–82 n. 18, 100 S.Ct. 2814, 2829–30 n. 18, 65 L.Ed.2d 973 (1980), addressed the circumstances where a trial judge may interpose reasonable time, place, and manner restrictions on access to criminal trials:

> Just as government may impose reasonable time, place and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic ... (citation omitted), so may a trial judge in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. '[T]he question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.'

Judge Purtill's order certainly does not offend any of the aforementioned principles, and is reasonable. The fear of unwarranted pressure on the jury is a legitimate concern. No information is being withheld from the plaintiffs or its viewers other than the faces of the jury. Allowing the plaintiffs to expose the identities of the jurors may jeopardize the rights of the jurors to be free from unwarranted pressures, and in turn, jeopardize the trial. The fact that such pressure has not yet materialized should not prohibit the judge from ensuring that the third *Lomax* trial continue smoothly through conclusion. Further, the order is entirely consistent with the instructions of the Code of Judicial Conduct of the State of Connecticut. Subsection 7 of Canon 3 states:

> No juror shall be the subject of any coverage permitted under these rules. However, in courtrooms where televising or photographing is impossible without including the jury as part of the unavoid-

able background, the televising or photographing is permitted, *but closeups which clearly identify individual jurors are prohibited.* (Emphasis added). In this light, the challenged order is a reasonable time, place, and manner restriction, and is constitutional.

Based on the foregoing, the defendant's motion to dismiss is DENIED, and the plaintiff's motion for preliminary injunction is DENIED.

SO ORDERED.