## NEBRASKA PRESS ASSN. ET AL. v. STUART, JUDGE

No. A–426.   Decided November 13, 1975

MR. JUSTICE BLACKMUN, Circuit Justice.

This is an application for stay of an order of the District Court of Lincoln County, Neb., that restricts coverage by the media of details concerning alleged sexual assaults upon and murders of six members of a family in their home in Sutherland, Neb.; concerning the investigation and development of the case against the accused; and concerning the forthcoming trial of the accused. The applicants are Nebraska newspaper publishers, national newswire services, media associations, a radio station, and employees of these entities.

The accused is the subject of a complaint filed in the County Court of Lincoln County, Neb., on October 19, 1975. The complaint was amended on October 22 and, as so amended, charged the accused with having perpetrated the assaults and murders on October 18. On October 21, the prosecution filed with the County Court a motion for a restrictive order. This motion alleged "a reasonable lik[e]lihood of prejudicial news which would make difficult, if not impossible, the impaneling of an impartial jury and tend to prevent a fair trial should the defendant be bound over to trial in the District Court if testimony of witnesses at the preliminary hearing is

reported to the public." The defense joined in the prosecution's request, and also moved that the preliminary hearing be closed to the public and the press.

Refusing the latter request, the County Court held an open preliminary hearing on October 22. On that day it bound the accused over to the District Court. It, however, did issue a protective order. The court found that there was "a reasonable likelihood of prejudicial news which would make difficult, if not impossible, the impaneling of an impartial jury." The court then ordered that no party to the action, no attorney connected with the defense or prosecution, no judicial officer or employee, and no witness or "any other person present in Court" was to "release or authorize the release for public dissemination in any form or manner whatsoever any testimony given or evidence adduced during the preliminary hearing." It went on to order that no "news media disseminate any information concerning this matter apart from the preliminary hearing other than as set forth in the Nebraska Bar-Press Guidelines for Disclosure and Reporting of Information Relating to Imminent or Pending Criminal Litigation." Excepted, however, were (1) factual statements of the accused's name, age, residence, occupation, and family status; (2) the circumstances of the arrest (time and place, identity of the arresting and investigating officers and agencies, and the length of the investigation); (3) the nature, substance and text of the charge; (4) quotations from, or any reference without comment to, public records or communications theretofore disseminated to the public; (5) the scheduling and result of any stage of the judicial proceeding held in open court; (6) a request for assistance in obtaining evidence; and (7) a request for assistance in obtaining the names of possible witnesses. The court also ordered that a copy of the pre-

liminary hearing proceedings was to be made available to the public at the expiration of the order.

A copy of the Bar-Press Guidelines was attached to the court's order and was incorporated in it by reference. In their preamble the Guidelines are described as a "voluntary code." They speak of what is "generally" appropriate or inappropriate for the press to disclose or report. The identity of the defendant, and also the victim, may be reported, along with biographical information about them. The circumstances of the arrest may be disclosed, as may the evidence against the defendant, "if, in view of the time and other circumstances, such disclosure and reporting are not likely to interfere with a fair trial." Confessions or other statements of the accused may not be disclosed, unless they have been made "to representatives of the news media or to the public." Also barred from disclosure are opinions as to the guilt of the accused, predictions of the outcome of trial, results of examinations and tests, statements concerning the anticipated testimony of witnesses, and statements made in court but out of the presence of the jury "which, if reported, would likely interfere with a fair trial." The media are instructed by the Guidelines that the reporting of an accused's prior criminal record "should be considered very carefully" and "should generally be avoided." Photographs are permissible provided they do not "deliberately pose a person in custody."

The applicants forthwith applied to the District Court of Lincoln County for vacation of the County Court's order. The defense, in turn, moved for continuation of the order and that all future proceedings in the case be closed. The respondent, as judge of the District Court, granted a motion by the applicants to intervene in the case. On October 27 he terminated the County Court's order and substituted his own. By its order of that

date the District Court found that "there is a clear and present danger that pre-trial publicity could impinge upon the defendant's right to a fair trial." It ordered that the pretrial publicity in the case be in accord with the above-mentioned Guidelines as "clarified by the court." The clarification provisions were to the effect that the trial of the case commences when a jury is impaneled and that all reporting prior to that event would be pretrial publicity; that it appeared that the defendant had made a statement or confession "and it is inappropriate to report the existence of such statement or the contents of it"; that it appeared that the defendant may have made statements against interest to three named persons and may have left a note; that "the nature of such statements, or the fact that such statements were made, or the nature of the testimony of these witnesses with reference to such statements in the preliminary hearing will not be reported"; that the testimony of the pathologist witness "dealing with technical subjects, tests or investigations performed or the results thereof, or his opinions or conclusions as a result of such tests or investigations will not be reported"; that "the identity of the person or persons allegedly sexually assaulted or the details of any alleged assault by the defendant will not be reported"; that the "exact nature of the limitations of publicity as entered by this order will not be reported," that is to say, "the fact of the entering of this order limiting pre-trial publicity and the adoption of the Bar-Press Guidelines may be reported, but specific reference to confessions, statements against interest, witnesses or type of evidence to which this order will apply will not be reported."

The applicants then sought from the District Court a stay of its order. Not receiving relief there, they applied to the Supreme Court of Nebraska for an immediate

stay and also for leave to commence an original action in the nature of mandamus and/or prohibition to vacate the District Court order of October 27. On November 4, counsel for the applicants was advised by the Clerk of the Supreme Court that under that court's rules "all motions must be noticed for a day certain when the court is regularly in session," and that the "next date for submission of such a matter will be Monday, December 1, 1975, and I suggest that your motion be noticed for that date."

On November 5, the applicants, reciting that the "District Court and the Nebraska Supreme Court have declined to act on the requested relief," filed with this Court, directed to me as Circuit Justice, the present application for stay of the order of the District Court in and for Lincoln County, Neb. Because of the obvious importance of the issue and the need for immediate action, and because of the apparent similarity of the facts to those that confronted MR. JUSTICE POWELL as Circuit Justice, in the case of *Times-Picayune Pub. Corp.* v. *Schulingkamp,* 419 U. S. 1301 (1974), I asked for prompt responses. That request has been honored and responses respectively were received on November 10 and 11 from the Attorney General of Nebraska on behalf of the respondent judge, from the Lincoln County attorney on behalf of the State, and from counsel for the accused.

I was advised yesterday, however, that on November 10 the Supreme Court of Nebraska issued a *per curiam* statement reciting that the applicants have petitioned that court for leave to file their petition for a writ of mandamus or other appropriate relief with respect to the District Court order of October 27, and further reciting that during that court's "consideration of the application and the request for stay of the order, we are reliably informed that the relators have filed with the Supreme

Court of the United States an application or a request that that court act to accomplish the same purposes to be accomplished by their request to us to exercise our original jurisdiction," and then providing:

"The existence of the two concurrent applications could put this court in the position of exercising parallel jurisdiction with the Supreme Court of the United States. We deem this inadvisable. Accordingly, the matter is continued until the Supreme Court of the United States has made known whether or not it will accept jurisdiction in the matter."

The issue raised is one that centers upon cherished First and Fourteenth Amendment values. Just as MR. JUSTICE POWELL observed in *Times-Picayune,* 419 U. S., at 1305, the case "presents a fundamental confrontation between the competing values of free press and fair trial, with significant public and private interests balanced on both sides." The order in question obviously imposes significant prior restraints on media reporting. It therefore comes to me " 'bearing a heavy presumption against its constitutional validity.' " *New York Times Co.* v. *United States,* 403 U. S 713, 714 (1971). But we have also observed that the media may be prohibited from publishing information about trials if the restriction is "necessary to assure a defendant a fair trial before an impartial tribunal." *Branzburg* v. *Hayes,* 408 U. S. 665, 685 (1972). See *Times-Picayune Pub. Corp.* v. *Schulingkamp,* 419 U. S., at 1307; *Newspapers, Inc.* v. *Blackwell,* 421 U. S. 997 (1975).

It is apparent, therefore, that if no action on the applicants' application to the Supreme Court of Nebraska could be anticipated before December 1, as the above-described communication from that court's clerk intimated, a definitive decision by the State's highest

court on an issue of profound constitutional implications, demanding immediate resolution, would be delayed for a period so long that the very day-by-day duration of that delay would constitute and aggravate a deprival of such constitutional rights, if any, that the applicants possess and may properly assert. Under those circumstances, I would not hesitate promptly to act.

It appears to me, however, from the Nebraska court's *per curiam* statement that it was already considering the applicants' application and request for stay that had been submitted to that tribunal. That court deferred decision, it says, because of the pendency of the similar application before me, and because it deemed inadvisable simultaneous consideration of the respective applications in Nebraska and here in Washington. Accordingly, the matter was "continued" until it was known whether I would act.

It is highly desirable, of course, that the issue, concerning, as it does, an order by a Nebraska state court, should be decided in the first instance by the Supreme Court of Nebraska, and that the pendency of the application before me should not be deemed to stultify that court in the performance of its appropriate constitutional duty. The application, after all, was submitted to me on the assumption that action by the Nebraska court would not be forthcoming until after a submission to be scheduled no earlier than December 1 and on the further assumption that the District Court's order satisfied the requirements of 28 U. S. C. § 1257. On the expectation, which I think is now clear and appropriate for me to have, that the Supreme Court of Nebraska, forthwith and without delay will entertain the applicants' application made to it, and will promptly decide it in the full consciousness that "time is of the essence,"

1326

I hereby give the Supreme Court of Nebraska that assurance it desired that, at least for the immediate present, I neither issue nor finally deny a stay on the papers before me. My inaction, of course, is without prejudice to the applicants to reapply to me should prompt action not be forthcoming.