*1350
 
 JORDAN, District Judge.
 

 The plaintiffs — Dow Jones
 
 &
 
 Company, Inc., New York Times Company, Media General Operations, Inc., Miami Herald Publishing Company, Gannett Satellite Information Network, Inc., and Sun-Sentinel Company, Inc. — publish newspapers.
 
 See
 
 Verified Complaint [D.E. 1] 1Í1Í 4-8 at 3-4 (March 10, 2000); Plaintiffs Motion to Add a Party [D.E. 18] 113 at 2 (March 23, 2000). Their complaint, brought pursuant to 42 U.S.C. § 1983, challenges as unconstitutional an order entered by the defendant, Judge Robert P. Kaye of Florida’s Eleventh Judicial Circuit, in a case pending before him,
 
 Engle et al. v. R.J. Reynolds Tobacco Co. et al,
 
 No. 94-8273.
 
 See
 
 Verified Complaint 111 at 2. The newspaper publishers move for a temporary restraining order enjoining enforcement of the order. Judge Kaye moves to dismiss the complaint.
 

 Facts
 

 Engle
 
 is a class action lawsuit against several tobacco companies to recover damages for diseases contracted as a result of cigarette addiction. The class includes all Florida citizens and residents who have been medically harmed by addiction to cigarettes.
 
 See id.
 
 1ÍH11, 12 at 4-5. The
 
 Engle
 
 lawsuit is newsworthy for several reasons, including the unprecedented scope of the plaintiff class and the staggering amount of money at stake.
 
 See id.
 
 HIT 20-29 at 6-7. Issues of liability and damages were bifurcated for trial.
 

 In October of 1998, after jury selection was completed for the liability phase of
 
 Engle,
 
 Judge Kaye entered the order that is the subject of this action. The order states:
 

 All parties and their agents are prohibited from holding any public meetings and/or pr,ess conferences or briefings which relate to any facts or issues concerning this case. In addition, no party [or] their agents are to make any public statement, written or oral, which pertains to any court proceedings in this case, including any parity’s] version. of the facts, issues, merits, and theories of the ease. All parties will also refrain from publicly characterizing any party or witness in this case.
 

 Engle
 
 Order on Motion for Relief (“Gag Order”) (Exhibit A to Verified Complaint) 116 at 3-4 (Oct. 20, 1998). The plaintiff newspaper publishers claim that the order unconstitutionally infringes their right, guaranteed by the First Amendment to the United States Constitution, to gather the news.
 
 See
 
 Verified Complaint UK 56-58 at 11-12. Reporters who work for the publishers have covered the
 
 Engle
 
 trial despite the order. They “have been able to attend and report on the trial” but claim that they “have been unable to obtain any information from the parties or their agents” because of the gag order. Memorandum of Law in Support of Motion for Temporary Restraining Order (“Plaintiffs’ TRO Memo”) [D.E. 5] at 15 (March 13, 2000).
 

 Judge Kaye entered the order because he became aware that the tobacco companies had planned a press conference and issued a press release that he determined “could conceivably have a detrimental effect on the fairness and impartiality of this trial.” Gag Order If 1 at 1. Upon learning of the scheduled press conference, Judge Kaye conducted a hearing to discuss entering the gag order.
 
 See Engle
 
 Transcript (Exhibit 1 to Defendant’s Memorandum of Law in Support of Motion to Dismiss (“Defendant’s Dismissal Memo”) [D.E. 10] (March 17, 2000)) (Oct. 16, 1998, 9:25 am.). Judge Kaye did not permit members of the media to attend the hearing,
 
 see id.
 
 at 5, and he and the parties concurred that there should be an agreement or an order preventing the parties and their counsel from speaking with the press during the trial.
 
 See id.
 
 at 6-10. The parties had input into the phrasing of the written order.
 
 See id.
 
 at 12-13;
 
 Engle
 
 Transcript (Exhibit 5 to Defendant’s Dismissal Memo) (Oct. 16,1998,12:45 p.m.).
 

 
 *1351
 
 More than a year later, some of the tobacco companies challenged the gag order. The liability phase of
 
 Engle
 
 had concluded by then and the case had progressed into its compensatory damages phase. Judge Kaye denied the motion to vacate the gag order,
 
 see Engle
 
 Order on Motion for Immediate Termination of Order (Exhibit 6 to Defendant’s Dismissal Memo) (Feb. 3, 2000), and the tobacco companies appealed to Florida’s Third District Court of Appeal. Plaintiff Dow Jones & Company sought to intervene in that appeal, but the Third District denied the request without explanation.
 
 See
 
 Order,
 
 R.J. Reynolds Tobacco Co. v. Engle,
 
 No. 3D00-372, (Exhibit 8 to Defendant’s Dismissal Memo) (Feb. 11, 2000). Instead, Dow Jones & Company participated in the appeal as
 
 amicus curiae.
 
 The Third District sustained the gag order.
 
 See R.J. Reynolds Tobacco Co. v. Engle,
 
 750 So.2d 781 (Fla. App. 3d Dist. 2000). As far as the record indicates, no one has sought review of that decision. Instead, the newspaper publishers brought this original action to challenge the gag order pursuant to 42 U.S.C. § 1983.
 
 See
 
 Verified Complaint 111138-42, 54 at 9,11.
 

 The
 
 Engle
 
 plaintiffs moved to intervene in this action and were granted permissive intervenor status.
 
 See
 
 Order Denying Motion to Intervene [D.E. 21] (March 24, 2000). The
 
 Engle
 
 plaintiffs have adapted Judge Kaye’s arguments.
 
 See
 
 Interve-nors’ Response and Joinder in Defendant’s Motion to Dismiss [D.E. 14] at 9 (March 17, 2000).
 

 Motions, Arguments, and Issues
 

 The newspaper publishers move on an emergency basis for a temporary restraining order that would prevent enforcement of the gag order. At this point, the compensatory damages phase of
 
 Engle
 
 is very nearly
 
 at
 
 an end; closing arguments are underway. There may be a third phase yet to come on the issue of punitive damages. See
 
 Engle
 
 Transcript (Exhibit 7 to Defendant’s Dismissal Memo) at 44145-46, 44150-51 (Feb. 1, 2000, 2:00 p.m.).
 

 Judge Kaye argues that the newspaper publishers’ complaint should be dismissed and that their motion for a preliminary injunction should be denied out of respect for the authority of the state courts and principles of comity.
 
 See
 
 Defendant’s Response to Motion for Temporary Restraining Order (“Defendant’s TRO Memo”) [D.E. 12] at 4-5 (March 17, 2000); Defendant’s Dismissal Memo at 7-16. The newspaper publishers argue that their complaint should not be dismissed because they have been denied any opportunity to present their constitutional claims in state court.
 
 See
 
 Plaintiffs’ Response to Motion to Dismiss [D.E. 15] at 3-4 (March 22, 2000). They point out that Judge Kaye prevented “media representatives” from attending the hearing preceding entry of the gag order and that the Third District did not allow Dow Jones & Company to intervene in the tobacco companies’ appeal.
 

 Shortly after the newspaper publishers responded to Judge Kaye’s motion to dismiss, all parties presented argument at a hearing. Under these circumstances, the motion for a temporary injunction should and will be treated as a motion for a preliminary injunction. This order is therefore appealable.
 
 See Cuban American Bar Ass’n, Inc. v. Christopher,
 
 43 F.3d 1412, 1421-22 (11th Cir.1995).
 

 The four prerequisites to a preliminary injunction are familiar; the movant must show (i) that he is substantially likely to succeed on the merits; (ii) that there exists a substantial threat of irreparable injury if the requested injunction is not entered; (iii) that the threatened injury outweighs the harm that the injunction might cause; and (iv) that the injunction will not harm the public interest.
 
 See Tefel v. Reno,
 
 180 F.3d 1286, 1295 (11th Cir.1999). The movant must clearly demonstrate that these criteria are met because a preliminary injunction is an extraordinary and drastic remedy.
 
 See Church v. City of Huntsville,
 
 30 F.3d 1332, 1342 (11th Cir.1994).
 

 
 *1352
 
 Judge Kaye argues that the newspaper publishers are not likely to succeed on the merits in this case because they could have sought relief from him. Therefore, the complaint should be dismissed out of respect for the state court’s authority and to prevent interference with its proceedings.
 
 See
 
 Defendant’s TRO Memo at 4-5. Defendant’s Dismissal Memo at 7-16. Thus, Judge Kaye’s first argument in opposition to the newspaper publishers’ motion for a preliminary injunction is the same argument underlying his motion to dismiss.
 

 Standing
 

 A threshold issue is whether the newspaper publishers have standing to bring this lawsuit.
 
 See United States v. Hays,
 
 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). A plaintiff has standing if he shows that he has been injured or threatened with injury and that the lawsuit is likely to redress that injury.
 
 See id.
 
 at 742-43, 115 S.Ct. 2431;
 
 Lujan v. Defenders of Wildlife,
 
 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). This irreducible constitutional minimum ensures that the plaintiff has a real stake in the case and an incentive to pursue it.
 

 The newspaper publishers demonstrate an injury to their First Amendment rights by showing that, but for Judge Kaye’s gag order, parties to the
 
 Engle
 
 litigation would talk to their reporters.
 
 See Davis v. East Baton Rouge Parish School Bd.,
 
 78 F.3d 920, 926-27 (5th Cir.1996);
 
 FOCUS v. Allegheny County Court of Common Pleas,
 
 75 F.3d 834, 838-39 (3d Cir.1996);
 
 In re Application of Dow Jones & Co.,
 
 842 F.2d 603, 606-08 (2d Cir.1988). Although, as the Third District pointed out, the parties to
 
 Engle
 
 all initially acquiesced in the gag order, some of the tobacco companies now would like to be freed from the restraint on their speech, as evidenced by their recent challenge to the order. Even if there had been no challenge, however, the question is not whether the
 
 Engle
 
 litigants are willing to assent to a gag order but whether, absent the gag order, they would speak to the media. The transcripts of the hearings before Judge Kaye leave no doubt that, before entry of the gag order, both sides of the
 
 Engle
 
 litigation were the frequent subjects of interviews for television and print media.
 
 See Engle
 
 Transcript at 6-9, 16-20 (Oct. 16, 1998, 12:45 p.m.);
 
 En-gle
 
 Transcript at 8-9, 10 (Oct. 16, 1998, 9:25 a.m.). There is every reason to believe that, were it not for the gag order, the flow of commentary would resume.
 
 See
 
 Affidavit of
 
 The Wall Street Journal
 
 staff reporter Milo Geyelin [D.E. 9] KH 18, 19 at 4 (March 10, 2000). Therefore, the newspaper publishers have standing because they have alleged an injury that will be redressed by the relief requested.
 

 Jurisdiction
 

 Judge Kaye argues that the complaint must be dismissed because, pursuant to the
 
 Rooker-Feldman
 
 doctrine, a federal district court lacks jurisdiction to review a state court’s decision. Only 'the United States Supreme Court, of course, can review state court decisions.
 
 See District of Columbia Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983);
 
 Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). However, “the
 
 Rooker-Feldman
 
 doctrine only applies to litigants who were parties of both the state court decision and the federal claim.”
 
 Scheer v. City of Miami,
 
 15 F.Supp.2d 1338, 1341 (S.D.Fla.1998).
 
 See Johnson v. De Grandy,
 
 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994);
 
 Agripost, Inc. v. Miami-Dade County,
 
 195 F.3d 1225, 1229 n. 7 (11th Cir.1999);
 
 Roe v. State of Alabama,
 
 43 F.3d 574, 580 (11th Cir.1995);
 
 Valenti v. Mitchell,
 
 962 F.2d 288, 297 (3d Cir. 1992). The newspaper publishers are not and were not parties in
 
 Engle.
 
 Moreover, the
 
 Rooker-Feldman
 
 doctrine applies only to claims definitively adjudicated in state court or inextricably intertwined with a state court adjudication.
 
 See David Vincent, Inc. v. Broward County,
 
 200 F.3d 1325, 1332 (11th Cir.2000);
 
 Gottfried v. Medical Planning Servs., Inc.,
 
 142 F.3d 326, 330 (6th Cir.1998);
 
 FOCUS,
 
 75 F.3d
 
 *1353
 
 at 840-41;
 
 Charchenko v. City of Stillwa-ter,
 
 47 F.3d 981, 988 (8th Cir.1995). A claim is inextricably intertwined if approving the claim necessarily entails finding that the state court decision was erroneous. Nee
 
 Agripost,
 
 195 F.3d at 1229 n. 7. In this case, because neither Judge Kaye nor the Third District considered the newspaper publishers’ First Amendment rights or claims in reaching their decisions on the gag order, adjudication of this complaint will not entail review of those decisions. Therefore, the
 
 Rooker-Feldman
 
 doctrine does not bar this action.
 

 Abstention and Deferral
 

 Judge Kaye also argues that, even if there is federal jurisdiction over the complaint, it should not be exercised. Out of respect for the role and authority of the several states, federal courts abstain from exercising their jurisdiction in “rare circumstances” when “principles of federalism and comity” require it.
 
 Growe v. Emison,
 
 507 U.S. 25, 32, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993).
 
 See Colorado River Water Conservation Disk v. United States,
 
 424 U.S. 800, 813-15, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (collecting cases). Comity refers to “a proper recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.”
 
 Younger v. Harris,
 
 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court has repeatedly emphasized that abstention should be invoked only rarely because federal courts have an obligation to exercise the jurisdiction conferred on them by Congress.
 
 See Quackenbush v. Allstate Ins. Co.,
 
 517 U.S. 706, 713, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (collecting cases).
 

 Depending on the particular circumstances, a federal court may abstain from exercising jurisdiction by dismissing the case before it or may defer the exercise of its jurisdiction by staying the case pending resolution of a state court proceeding.
 
 See id.
 
 at 719-21, 116 S.Ct. 1712;
 
 Growe,
 
 507 U.S. at 32
 
 &
 
 n. 1, 113 S.Ct. 1075;
 
 England v. Louisiana State Bd. of Med. Examiners,
 
 375 U.S. 411, 423-24, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (Douglas, J., concurring). When a federal constitutional claim may be altered or mooted by a concurrent state court proceeding, a federal court usually defers rather than dismiss the case before it.
 
 See, e.g., Harrison v. NAACP,
 
 360 U.S. 167, 176-79, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959);
 
 Railroad Comm’n v. Pullman Co.,
 
 312 U.S. 496, 501-02, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Although dismissal is never appropriate when monetary damages are sought,
 
 see Quackenbush,
 
 517 U.S. at 731, 116 S.Ct. 1712, the newspaper publishers seek only equitable relief. Therefore, either abstention or deferral may be appropriate if this is one of those rare cases in which “principles of federalism and comity” weigh against immediately exercising federal jurisdiction.
 
 See id.
 

 Judge Kaye contends that the case should be dismissed pursuant to the
 
 Younger
 
 abstention doctrine. In
 
 Younger,
 
 the Supreme Court held that federal courts should not issue declarations or injunctions that interfere with ongoing state court criminal proceedings unless the plaintiff shows bad faith, harassment, or some other unusual situation. 401 U.S. at 55, 91 S.Ct. 746. In later decisions, the Supreme Court extended
 
 Younger
 
 to civil actions implicating important state interests.
 
 See Ankenbrandt v. Richards,
 
 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (collecting cases). However, like the
 
 Rooker-Feldman
 
 doctrine,
 
 Younger
 
 applies only to the claims of those who are parties to an ongoing state court proceeding.
 
 “Younger
 
 abstention cannot apply to one ... who is a stranger to the state proceeding.”
 
 Gottfried,
 
 142 F.3d at 329.
 

 [NJowhere in the
 
 Younger
 
 line of cases is it even intimated that, while a state prosecution is pending, a federal court,
 
 *1354
 
 in an appropriate case between persons not parties to the state action, may not address issues of federal law that are simultaneously being litigated in state court. Rather, as this Court recently pointed out in
 
 Robinson v. Stovall,
 
 646 F.2d 1087, 1090 (5th Cir.1981), a “plaintiffs ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else (whether or not the state defendant is a litigant in a federal action).” Generally speaking, abstention bars prospective relief to a person not a party to the. state action only in the extraordinary situation in which the interests of the state defendant and the federal plaintiff are so “intertwined” as to be considered identical. But neither a mere “common interest in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs.”
 

 United States v. Composite State Bd. of Med. Examiners,
 
 656 F.2d 131, 137 (5th Cir. Unit B 1981) (citations omitted).
 
 [1]
 

 See also Doran v. Salem Inn, Inc.,
 
 422 U.S. 922, 927-28, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975);
 
 Cheffer v. McGregor,
 
 6 F.3d 705, 715 (11th Cir.1993),
 
 vacated on other grounds,
 
 41 F.3d 1422 (11th Cir.1994)
 
 (en banc) (per curiam); Liedel v. Juvenile Court of Madison County,
 
 891 F.2d 1542, 1546 n. 7 (11th Cir.1990). Thus,
 
 Younger
 
 does not bar the newspaper publishers’ claims.
 

 None of the cases on which Judge Kaye relies—
 
 McKusick v. City of Melbourne,
 
 96 F.3d 478 (11th Cir.1996),
 
 Hoover v. Wagner,
 
 47 F.3d 845 (7th Cir.1995), and
 
 News-Journal Corp. v. Foxman,
 
 939 F.2d 1499 (11th Cir.1991) — is to the contrary. These cases either do not involve
 
 Younger
 
 abstention or are otherwise distinguishable.
 

 In
 
 McKusick,
 
 the Eleventh Circuit held that a plaintiff could not challenge a facially valid injunction based on only her fear that the injunction might be enforced unconstitutionally. 96 F.3d at 489. The Eleventh Circuit reasoned that allowing such suits would place federal courts in the “unseemly, repetitive, quasi-systemic” position of having to supervise how local police enforced a state court injunction.
 
 Id.
 
 at 488. It also noted that a claim by the same plaintiff for an actual injury would not be barred:
 

 We note that if McKusick should ever be wrongfully arrested or punished for the exercise of her First Amendment rights, she will have remedies through which to vindicate those rights. For example, any future claims for damages that McKusick might bring for an arrest without probable cause would not be subject to dismissal under the abstention principles governing her present claim for equitable relief.
 

 Id.
 
 at 489 (citation omitted).
 
 Younger
 
 had nothing to do with the
 
 McKusick
 
 decision.
 

 The plaintiffs in
 
 Hoover
 
 also feared being arrested if they violated an injunction restricting protests of abortion. They sought, on the basis of “a handful of examples in which Milwaukee police officers may have overenforced the injunction,” to prevent enforcement of the injunction. 47 F.3d at 851. The Seventh Circuit held that
 
 Younger
 
 did not apply to the plaintiffs’ claims because they had not been and might never be presented to a state court.
 
 See id.
 
 at 848. It nevertheless affirmed dismissal of the complaint because the relief the plaintiffs sought was tantamount to an advisory opinion, which federal courts cannot give.
 
 See id.
 
 at 851. The Seventh Circuit explained, however, that “[sjhould the plaintiffs ever be arrested or otherwise impeded or punished for the exercise of their right of free speech, they will have an
 
 *1355
 
 abundance of state and federal remedies to which to appeal.”
 
 Id.
 
 at 848.
 

 In
 
 Foxman,
 
 the Eleventh Circuit considered
 
 Younger’s
 
 application to a newspaper’s challenge of a gag order entered by another Florida circuit judge in a pending criminal case. The plaintiff, the News-Journal Corporation, was represented by counsel at an evidentiary hearing the judge conducted immediately before entering the gag order.
 
 See
 
 939 F.2d at 1501-04. It is not clear whether the News-Journal Corporation was formally granted intervenor status, but in addition to presenting its position at the initial hearing, it was able to appeal the gag order to Florida’s Fifth District Court of Appeal. When the Fifth District’s ruling was not forthcoming, the News-Journal Corporation filed a § 1983 action in federal court.
 
 See id.
 
 at 1505-06. Shortly thereafter, the Fifth District sustained the gag order in major part, and five days later the federal district court dismissed the complaint pursuant to the
 
 Younger
 
 abstention doctrine. Finding that the News-Journal Corporation “had an adequate state forum” in which to present its First Amendment claims, the Eleventh Circuit affirmed the district court’s dismissal.
 
 Id.
 
 at 1516.
 

 Foxman
 
 turns on the fact that the News- Journal Corporation’s claims were presented to and adequately considered by the state courts.
 
 See id.
 
 at 1508-11. The Eleventh Circuit made that clear by expressly distinguishing
 
 Connecticut Magazine v. Moraghan,
 
 676 F.Supp. 38 (D.Conn.1987).
 
 Connecticut Magazine
 
 also involved a magazine publication’s challenge to a gag order entered in a pending state criminal case. Not only was the magazine in that case not permitted to participate in the state court action, but it was not allowed even to
 
 file
 
 a motion to intervene. 676 F.Supp. at 41. When the magazine brought a § 1983 suit, the district court held that “assuming that it was necessary, Connecticut Magazine fulfilled any requirement that state court remedies be exhausted, and this Court need not abstain from ruling on plaintiffs motion for preliminary injunction.”
 
 Id.
 
 at 42. The
 
 Foxman
 
 panel reasoned that, while
 
 Younger
 
 barred the News-Journal Corporation’s § 1983 action, the
 
 Connecticut Magazine
 
 plaintiffs inability to intervene in state court rendered the
 
 Younger
 
 abstention doctrine inapplicable to its federal action.
 
 See
 
 939 F.2d at 1511 n. 15.
 

 Neither
 
 Foxman
 
 nor
 
 Connecticut Magazine
 
 addresses whether a plaintiff seeking to enjoin enforcement of a state court gag order must first seek to intervene in the state court action. There is no such requirement.
 

 [Hjaving an opportunity to intervene doesn’t bind you as a party would be bound by the judgment in the suit in which you could have intervened.... Certainly nothing in
 
 Younger
 
 or the cases following it suggests that persons claiming a violation of their federal rights have an obligation before turning to federal court to see whether there is some state court proceeding that they might join in order to present their federal claims there.
 

 Hoover,
 
 47 F.3d at 848 (Posner, J.).
 
 Accord FOCUS,
 
 75 F.3d at 840-41, 844.
 
 See also Patsy v. Board of Regents,
 
 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (holding that § 1983 plaintiffs need not exhaust state remedies).
 

 Like the magazine in
 
 Connecticut Maga,-zine,
 
 the plaintiffs in
 
 FOCUS
 
 were also prevented from moving to intervene so they could challenge a state court gag order entered in a child custody case. After failing to obtain extraordinary relief from the Pennsylvania state appellate courts, the plaintiffs abandoned their state court efforts without directly appealing the denial of their motion to intervene and brought a § 1983 action in federal court.
 
 See id.
 
 at 836-37. The Third Circuit reversed the district court’s decision to abstain. Because the plaintiffs had tried and failed to have a state court consider and adjudicate its constitutional claims, they were not parties to the state court litiga
 
 *1356
 
 tion and their claims were not barred by
 
 Younger. See id.
 
 at 840-44. Following
 
 Hoover,
 
 the Third Circuit held, moreover, that the plaintiffs had no obligation to exhaust their state court remedies by appealing, but could immediately have brought their § 1983 action in federal court:
 

 If a would-be federal plaintiff in a civil rights action has no duty to attempt to intervene in an ongoing state suit in which he might be able to tender his constitutional issue, it follows, we believe, that FOCUS, once rejected by the court that entered the gag order, had no duty to exhaust all extraordinary state remedies in an attempt to intervene. The
 
 Younger
 
 doctrine is based on comity and the notion that comity makes it undesirable to permit a party access to a federal court when he is currently involved in state proceedings where he can secure an adjudication of his constitutional claim. We believe FOCUS has done everything that considerations of comity can reasonably require of it. It could have gone directly to federal court without seeking to intervene.
 

 Id.
 
 at 844.
 

 The newspaper publishers in this case, other than Dow Jones & Company, did just that. Unlike the plaintiffs in
 
 Foxman, Connecticut Magazine,
 
 and
 
 FOCUS,
 
 they brought this § 1983 action without seeking to intervene in
 
 Engle
 
 or requesting that Judge Kaye revisit his order in light of their First Amendment claims. Although the transcript is not clear on this point, it seems that the “media representatives” that Judge Kaye excluded from the initial hearing on the gag order were reporters seeking to cover the hearing, not lawyers wanting to argue the media’s legal position. As for Dow Jones & Company, its motion to intervene was unsuccessful, leaving it in a similar position to the plaintiffs in
 
 Connecticut Magazine
 
 and
 
 FOCUS.
 
 Unlike those plaintiffs, however, Dow Jones & Company did not seek to be heard in state court until the gag order was appealed and even then it participated only as
 
 amicus curiae,
 
 not as a party. Such limited participation does not bring
 
 Younger
 
 to bear on Dow Jones & Company’s claims.
 
 See Benavidez v. Eu,
 
 34 F.3d 825, 832 (9th Cir.1994) (stating that
 
 Younger
 
 abstention doctrine does not bar claims of those participating as
 
 amicus curiae
 
 in state court proceeding).
 

 As
 
 Foxman
 
 emphasizes, parties and their counsel must carefully consider their choice of forum when arguing a federal civil rights claim.
 
 Foxman
 
 held that the News-Journal Corporation was precluded from suing in federal court because, unlike the plaintiff in
 
 Connecticut Magazine,
 
 it had already had its claims adjudicated in state court. Thus, had the newspaper publishers successfully intervened in
 
 En-gle,
 
 they would have waived their right to bring this action by effectively agreeing to have the Florida state courts adjudicate their First Amendment claims, subject to discretionary review by the United States Supreme Court.
 

 It may seem that these cases lay a trap for the unwary litigant who seeks to address a state court judge about a gag order and then discovers that he has inadvertently lost his opportunity to bring a federal court action.
 
 See England,
 
 375 U.S. at 435, 84 S.Ct. 461 (Douglas, J., concurring). One might conclude that the plaintiffs in
 
 Connecticut Magazine
 
 and
 
 FOCUS
 
 (and perhaps even Dow Jones
 
 &
 
 Company in this case) were fortunate to have been shut out of state court. No doubt the News-Journal Corporation and its counsel wish they had been so lucky. Despite the inherent pitfall, the Supreme Court has held that our federal system requires parties to think twice before presenting their claims:
 

 [W]e see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court. Such a rule would not only countenance an unneces
 
 *1357
 
 sary increase in the length and cost of the litigation; it would also be a potential source of friction between the state and federal judiciaries. We implicitly rejected such a rule in
 
 [NAACP v. Button,
 
 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)], when we stated that a party elects to forgo his right to return to the District Court by a decision “to seek a complete and final adjudication of his rights in the state courts.” We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then — whether or not he seeks direct review of the state decision in this Court — he has elected to forgo his right to return to the District Court.
 

 England,
 
 375 U.S. at 419, 84 S.Ct. 461. A plaintiff preserves his ability to sue in federal court only by presenting his claims there first. If the district court defers exercising jurisdiction to allow a state court to consider the claims, the plaintiff must inform the state court “that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions.”
 
 Id.
 
 at 421, 84 S.Ct. 461.
 
 See also Migra v. Warren City School Dist. Bd. of Educ.,
 
 465 U.S. 75, 85 n. 7, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).
 
 Cf. Louisiana Power & Light Co. v. City of Thibodaux,
 
 360 U.S. 25, 29-30, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (affirming district court’s decision to stay federal action pending interpretation of expropriation statute by Louisiana Supreme Court).
 

 That
 
 Younger
 
 does not bar this action does not quite end consideration of abstention and deferral. “The various types of abstention are not rigid pigeonholes into which the federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.”
 
 Pennzoil Co. v. Texaco, Inc., 481 U.S.
 
 1, 11 n. 9, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). It remains to be considered, therefore, whether this is one of those situations in which the “complex of considerations” favors abstaining or deferring while the newspaper publishers argue their claims before Judge Kaye and preserve their federal forum pursuant to
 
 England.
 
 “‘Abstention questions must be resolved by close attention to the facts of each case.’ ”
 
 Foxman,
 
 939 F.2d at 1516 (quoting
 
 Fields v. Rockdale County,
 
 785 F.2d 1558, 1560 (11th Cir.1986)).
 

 The Sixth Circuit confronted a similar situation in
 
 Gottfried.
 
 The plaintiff, an anti-abortion activist, challenged a state court injunction that prevented her from picketing an abortion clinic. She claimed that the injunction, which had been in effect for twelve years, was unconstitutional on its face and as applied to her. The plaintiff was not a party to the lawsuit in which the injunction was entered.
 
 See
 
 142 F.3d at 328. The district court determined that no doctrine required dismissal of the case but dismissed it anyway based in part on considerations of comity.
 
 See id.
 
 at 328-30. The Sixth Circuit agreed that “equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law.”
 
 Id.
 
 at 330. Furthermore, the state court was “familiar with local conditions and transportation patterns and [was] in a better position to accommodate [the plaintiff’s] constitutional rights through modification or narrow construction of its injunction.”
 
 Id.
 
 at 333. The Sixth Circuit therefore held that “a federal court should abstain when a nonparty to a state court injunction brings a First Amendment challenge to the injunction in federal court before requesting relief from the state court.”
 
 Id.
 
 at 332. District courts should, however, stay the federal challenge rather than dismiss it to permit the plaintiff to return to federal court under
 
 England. See id. at 332-33.
 

 
 *1358
 
 The Sixth Circuit’s blanket requirement that district courts abstain from all First Amendment challenges to state court injunctions seems to be at odds with the Supreme Court’s repeated admonitions that federal courts should abstain only rarely. It is also inconsistent with the Supreme Court’s recent confirmation that “ § 1983 contains no judicially imposed exhaustion requirement; absent some other bar to the suit, a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed.”
 
 Edwards v. Balisok,
 
 520 U.S. 641, 649, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Moreover, because abstention necessarily results in delaying final adjudication — sometimes for years,
 
 see England,
 
 375 U.S. at 425-26, 84 S.Ct. 461 (Douglas, J., concurring) — requiring it in cases brought on First Amendment grounds is particularly problematic: “It is vital to the operation of democratic government that the citizens have facts and ideas on important issues before them. A delay of even a day or two may be of crucial importance in some instances.”
 
 Quantity of Copies of Books v. Kansas,
 
 378 U.S. 205, 210, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (Harlan, J.).
 

 The Sixth Circuit’s reasoning is not persuasive for other reasons as well. This is not a case that involves a proceeding “intimately involved with sovereign prerogative.”
 
 Thibodaux,
 
 360 U.S. at 28, 79 S.Ct. 1070. Neither is it a case in which “the State’s interest in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.”
 
 Pennzoil,
 
 481 U.S. at 11, 107 S.Ct. 1519. While this particular civil proceeding is unique in its scope and in the amount of money at stake, the state of Florida’s interest in it as sovereign is no greater than its interest in any other civil proceeding pending in its courts.
 
 See First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.,
 
 825 F.2d 1475, 1483 (11th Cir.1987). Awarding the relief sought would not interfere with Florida’s ability to administer its judiciary.
 
 Compare Pennzoil,
 
 481 U.S. at 14, 107 S.Ct. 1519. It is therefore doubtful that principles of comity in this case outweigh the newspaper publishers’ right to a resolution of their claims in their chosen forum.
 

 In any event, the Sixth Circuit’s approach is not an available option because the Eleventh Circuit has said that “where an injunction is attacked on First Amendment grounds and is facially overbroad, abstention for comity and federalism reasons is inappropriate.”
 
 McKusick,
 
 96 F.3d at 489 (citing
 
 Machesky v. Bizzell,
 
 414 F.2d 283, 290-91 (5th Cir.1969));
 
 Cate v. Oldham,
 
 707 F.2d 1176, 1184-85 (11th Cir. 1983). If so, it follows that the plaintiff has shown that he is substantially likely to succeed on the merits and has met the first requirement for a preliminary injunction.
 
 See Shamloo v. Mississippi State Bd. of Trustees of Institutions of Higher Learning,
 
 620 F.2d 516, 525 (5th Cir.1980) (holding that district court abused its discretion by failing to enjoin state university regulation that allowed only “wholesome” demonstrations).
 

 Before turning to the merits of the newspaper publishers’ facial challenge, however, it should be noted that the Third District’s findings or holdings regarding Judge Kaye’s order are not binding in this action:
 

 We think that the interest of avoiding conflicting outcomes in the litigation of similar issues, while entitled to substantial deference in a unitary system, must of necessity be subordinated to the claims of federalism in this particular area of the law. The classic example is the petitioner in
 
 [Steffel v. Thompson,
 
 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ] and his companion. Both were warned that failure to cease pamphleteering would result in their arrest, but while the petitioner in
 
 Stejfel
 
 ceased and brought an action in the federal court, his companion did not cease and was prosecuted on a charge of criminal
 
 *1359
 
 trespass in the state court. The same may be said of the interest in conservation of judicial manpower. As worthy a value as this is in a unitary system, the very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system.
 

 Doran,
 
 422 U.S. at 927-28, 95 S.Ct. 2561 (citations omitted).
 

 The Constitutionality of the Gag Order
 

 “[Njews gathering is not without its First Amendment protections.... ”
 
 Branzburg v. Hayes,
 
 408 U.S. 665, 707, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). That protection, however, is not absolute, and the media’s right of access to information is no greater than that of the public.
 
 See id.
 
 at 684, 92 S.Ct. 2646;
 
 Zemel v. Rusk,
 
 381 U.S. 1, 16-17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965);
 
 United States v. Gurney,
 
 558 F.2d 1202, 1208 (5th Cir.1977). Gag orders aimed at participants in criminal trials have been found to be constitutionally permissible where the injury to any First Amendment right is outweighed by the Sixth Amendment right to a fair trial.
 
 See, e.g., Dow Jones & Co.,
 
 842 F.2d at 609;
 
 Radio & Television News Ass’n v. United States District Court,
 
 781 F.2d 1443, 1446 (9th Cir.1986).
 
 See also Fox-man,
 
 939 F.2d at 1512-15. Relying on the Seventh Amendment,
 
 [2]
 
 the Third Circuit has found that the same analysis governs in civil cases.
 
 See Bailey v. Systems Innovation, Inc.,
 
 852 F.2d 93, 97-98 (3d Cir. 1988). Other circuits have stated that civil trials, because of their nature and relatively longer duration, “do not as readily justify a restriction on speech” as criminal trials.
 
 Chicago Council of Lawyers v. Bauer,
 
 522 F.2d 242, 257-58 (7th Cir.1975).
 
 Accord Hirschkop v. Snead,
 
 594 F.2d 356, 373 (4th Cir.1979). It is not necessary, however, to determine whether greater incursions on freedom of speech are constitutionally justifiable in a criminal context than in a civil context. For purposes of this decision, it can be assumed that the right to a fair civil trial in Florida is as great as the Sixth Amendment right to a fair criminal trial.
 

 The newspaper publishers challenge this gag order on essentially two grounds: that it is constitutionally over-broad because it prohibits all commentary regarding the
 
 Engle
 
 proceedings by the trial participants and that it does not specify a termination date.
 
 See
 
 Plaintiffs’ TRO Memo at 11-14. They also argue that Judge Kaye did not make any factual findings that might support this broad order. Judge Kaye responds only that the lack of a termination date is an insubstantial oversight or technicality: “As common sense dictates, the order ends when the jury finishes its deliberations.” Defendant’s Reply Memorandum of Law in Support of Defendant’s Motion to Dismiss [D.E. ] at 10-11 (March 27, 2000). He does not point to any evidence or findings in the
 
 Engle
 
 record that would support the gag order. Although Judge Kaye’s participation in this action is constrained — he cannot “take an adversarial role with regard to an issue that may later come before him for resolution,” Defendant’s Notice of Supplemental Authority [D.E. 30] (March 29, 2000) (citing cases) — nothing prevents him from showing, by reference to the
 
 Engle
 
 record, that the gag order was warranted.
 

 Prior to enjoining the speech of trial participants, a trial court must specifically find, based on the available evidence, that the fairness of the trial is seriously threatened by publicity and that nothing short of a gag order will suffice to
 
 *1360
 
 protect the litigants’ right to a fair trial.
 
 See Nebraska Press Ass’n v. Stuart,
 
 427 U.S. 539, 563-65, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976);
 
 Dow Jones,
 
 842 F.2d at 611;
 
 Radio & Television News Ass’n,
 
 781 F.2d at 1448 (Nelson, J., concurring). When a gag order is challenged by someone whose speech it does not directly prohibit — like the newspaper publishers in this case — it ■will be upheld if it prohibits speech that is reasonably likely to prejudice the fairness of the trial.
 
 See Foxman,
 
 939 F.2d at 1512;
 
 Dow Jones & Co.,
 
 842 F.2d at 610;
 
 Radio & Television News Ass’n,
 
 781 F.2d at 1446.
 
 But see CBS, Inc. v. Young,
 
 522 F.2d 234, 238 (6th Cir.1975) (holding that standard of review was whether there was “clear and present dangerous threat to a protected competing interest.”). A higher standard of review is employed when the order is challenged by those whose speech is directly restrained.
 
 See Dow Jones & Co.,
 
 842 F.2d at 610;
 
 Levine v. United States District Court,
 
 764 F.2d 590, 595 (9th Cir.1985). Some commentators have suggested that a gag order directed at trial participants, when challenged by the media, should be analyzed from the perspective of the public’s right to receive information.
 
 See, e.g.,
 
 R. Todd,
 
 A Prior Restraint By Any Other Name: The Judicial Response to Media Challenges Directed at Trial Participants,
 
 88 Mich.L.Rev. 1171, 1188-92 (1990).
 
 See also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,
 
 425 U.S. 748, 756, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (holding that First Amendment protections extends “to the communication, to its source and to its recipients both”);
 
 Cox Broadcasting Corp. v. Cohn,
 
 420 U.S. 469, 490-91, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (“[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations.”); O. Fiss,
 
 The Irony of Free-Speech
 
 53 (1996) (“For constitutional purposes, the relevant market is an informational one, the domain from which the public finds out about the world that lies beyond its immediate experience.”).
 

 The record fails to show that the gag order entered in
 
 Engle
 
 was necessary to ensure a fair trial. While the Third District noted that Judge Kaye’s order contains “a specific finding regarding the necessity for its entry,” that single finding does not support such a broadly sweeping injunction on speech. Judge Kaye found that a press release prepared by one or more tobacco companies “could conceivably have a detrimental effect on the fairness and impartiality of this trial.... ” Gag Order 111 at 1. The order notes that there have been interviews of the trial participants as well as other “publicity,” but it does not contain any findings about the nature of this publicity. Specifically, there is no finding that the publicity, the press release, or anything else seriously threatened the fairness of the trial. There are also no findings as to whether measures short of a gag order would suffice to combat the perceived threat. Even assuming that all speech that “could conceivably have a detrimental effect” on the fairness of a trial could ever constitutionally be proscribed, it cannot be done on this record.
 

 The gag order is also overbroad in scope and of indefinite duration. It forbids the trial participants “to make any public statement, written or oral, which pertains to any court proceedings in this case.... ”
 
 See
 
 Gag Order 116 at 3-4. It is not limited to prohibiting only those extrajudicial statements that would in fact be likely to affect the fairness of the trial.
 
 Compare Dow Jones,
 
 842 F.2d at 606 (affirming gag order that excepted statements of fact concerning trial events from prohibition on prosecutors’ statements to the media);
 
 Levine,
 
 764 F.2d at 599 (holding that courts must narrowly tailor gag orders to proscribe only those statements that threaten administration of justice and giving examples). The gag order, furthermore, is unlimited in duration. It is, according to its
 
 *1361
 
 terms, a permanent injunction that forever bars the litigants and their counsel from commenting on a significant case. Judge Kaye doubtlessly did not intend, as he argues, the order to be interminable.
 
 See also Engle
 
 Transcript at 10 (Oct. 16, 1998, 9:25 a.m.) (“When the case is over, you may feel free to do whatever it is that you want do.”). However, the very fact that the order requires clarification and leaves the newspaper publishers (as well as the
 
 Engle
 
 litigants) to guess at whether and when they can exercise their First Amendment rights renders it indefinite and facially defective.
 
 Cf. Vance v. Universal Amusement Co.,
 
 445 U.S. 308, 316, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (striking down obscenity statute on ground that it restrained speech for period of “indefinite duration”). Even the quoted excerpt from Judge Kaye’s reply memorandum does not make clear when the order ends. There may be another phase of this trial when the pending phase concludes. The reply memorandum does not specify whether the gag order expires with the jury deliberations in Engle’s second phase or with all jury deliberations in the case. Moreover, it is not clear from the record that the gag order was necessary once a jury was selected or once a verdict was reached in the liability phase.
 

 The gag order, which purports to permanently enjoin the
 
 Engle
 
 trial participants from discussing all aspects of the case, is not supported by the record and is unconstitutional on its face. Therefore, abstention is inappropriate. The newspaper publishers have shown a substantial likelihood of success on the merits, leaving for consideration the newspaper publishers’ alleged irreparable injury, the balance of harms, and the public interest.
 

 Irreparable Injury
 

 An injury is irreparable if monetary damages will not redress it.
 
 See Cate,
 
 707 F.2d at 1189;
 
 Deerfield Med. Center v. City of Deerfield Beach,
 
 661 F.2d 328, 338 (5th Cir. Unit B 1981). Infringement of First Amendment rights is presumed to constitute an irreparable injury that will support the issuance of a preliminary injunction.
 
 See Elrod v. Burns,
 
 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion);
 
 Deerfield Med. Center v. City of Deerfield Beach,
 
 661 F.2d 328, 338 (5th Cir. Unit B 1981). The newspaper publishers specifically argue that they will be irreparably injured if they are deprived of the newsworthy information that the
 
 Engle
 
 trial participants would provide them but for the gag order. Money will not redress this deprivation.
 

 Judge Kaye responds that the fact that the newspaper publishers waited more than a year to challenge the gag order belies this claim of irreparable injury. To support this argument, he relies on several trademark cases, which hold that laches may bar a request for a preliminary injunction.
 
 See, e.g., Hubbard Feeds, Inc. v. Animal Feed, Supplement, Inc.,
 
 182 F.3d 598, 603 (8th Cir.1999);
 
 Tough Traveler, Ltd. v. Outbound Prods.,
 
 60 F.3d 964, 968 (2d Cir.1995);
 
 Citibank N.A. v. Citytrust,
 
 756 F.2d 273, 276 (2d Cir.1985). That rule exists in Lanham Act cases because a plaintiffs delay in requesting a preliminary injunction will often shift the balance of equities in the defendant’s favor if he has built his business in reliance on the delay: “[I]t cannot be equitable for a well-informed merchant with knowledge of a claimed invasion of right to wait to see how successful his competitor will be and then destroy, with the aid of a court decree, much that the competitor has striven for and accomplished....’”
 
 Polaroid Corp. v. Polarad Elecs. Corp.,
 
 287 F.2d 492, (2d Cir. 1961) (quoting
 
 Valvoline Oil Co. v. Havoline Oil Co.,
 
 211 F. 189, 195 (S.D.N.Y. 1913)).
 
 See also Dwinell-Wright Co. v. White House Milk Co.,
 
 132 F.2d 822, 824-25 (2d Cir. 1943) (Hand, L., J.). Laches will usually not bar a permanent injunction in such cases if the plaintiff proves the elements of the offense.
 
 See Menendez v. Holt,
 
 128 U.S. 514, 523-24, 9 S.Ct. 143, 32 L.Ed. 526 (1888);
 
 Gillette Co. v. Ed Pi-
 
 
 *1362
 

 naud, Inc.,
 
 178 F.Supp. 618, 622 (S.D.N.Y. 1959).
 

 This rationale is not applicable in the context of an alleged First Amendment violation where “each passing day may constitute a separate and cognizable infringement on the First Amendment.”
 
 Nebraska Press Ass’n v. Stuart,
 
 423 U.S. 1319, 1325, 96 S.Ct. 237, 46 L.Ed.2d 199 (1975) (Blackmun, J., in chambers). The present situation is not in any way similar to one in which a potential trademark infringer relies on the trademark holder’s inaction while investing resources and effort in building a business. Judge Kaye’s position has not changed in reliance on the newspaper publishers’ apparent acquiescence to his gag order. For that reason, the fact that they delayed in bringing their complaint does not affect the balance of equities, and laches will not bar the requested relief.
 
 See Million Youth March, Inc. v. Safir,
 
 18 F.Supp.2d 334, 339-40 (S.D.N.Y.1998). Absent extraordinary circumstances, it is for the media to decide at what point a matter becomes sufficiently newsworthy to warrant the expenditure of legal fees and costs for the vindication of First Amendment rights.
 

 The
 
 Engle
 
 plaintiffs point out that the media have published hundreds of articles about the
 
 Engle
 
 case despite the gag order, which deprives the media only of “comments from counsel and the litigants, placing their spin on trial events and the litigants.” Intervenors’ Response at 11.
 
 See
 
 Intervenors’ Notice of Filing Supplemental Authority [D.E. 29] (March 28, 2000). So long as the fairness of the trial is not unduly jeopardized, it is not for the judiciary to determine whether the public has enough news about the trial or whether the trial participants’
 
 “spin”
 
 — i.e. their opinions and impressions — would be interesting to the public.
 

 There is nothing to overcome the presumption of irreparable injury to the newspaper publishers if they are unable to receive information from the
 
 Engle
 
 trial participants about the case.
 

 The Balance of Harms and the Public Interest
 

 The gag order at issue harms the newspaper publishers by making it impossible for them to obtain any information from the parties and counsel involved in
 
 Engle.
 
 Judge Kaye contends that enjoining enforcement of the gag order will impinge on the litigants’ right to a fair trial. These competing interests, as well as the public’s interest, must be balanced to determine whether to grant the requested relief.
 

 The newspaper publishers confidently assert that “the media’s interest
 
 is
 
 the public’s interest.” Plaintiffs’ TRO Memo at 18. The point of this lawsuit, however, is to examine whether the proper balance has been struck between the public’s interest in news about the
 
 Engle
 
 trial and the public’s interest in the
 
 Engle
 
 trial being conducted fairly. Thus, while both the media and Judge Kaye can rightfully claim to represent the public’s interest, such representations do not advance the analysis very far.
 

 Rather, the, question is whether the gag order now in effect is necessary to a fair trial. There is nothing in the record to indicate that it is. While the
 
 Engle
 
 plaintiffs warn that the “tobacco companies have sophisticated media departments and there exits a high probability, if not certainty, that absent the [gag] order, the tobacco companies would attack the class representatives, class members, witnesses for the class, and the trial judge,” Interve-nors’ Response at 10, this is nothing more than speculation on this record. The content of the speech suppressed by the gag order is not a consideration, except insofar as the evidence shows that there is a serious threat to the fairness of the trial.
 
 See Shamloo,
 
 620 F.2d at 525 (holding that district court denying preliminary injunction abused its discretion by considering Iranian students’ political beliefs in light of Iran holding American hostages). No such threat has been shown.
 

 
 *1363
 
 The equities therefore favor enjoining enforcement of this particular gag order. It is for Judge Kaye to determine whether a more narrowly drawn gag order is necessary under the circumstances currently prevailing in the
 
 Engle
 
 litigation to ensure that the trial is concluded fairly.
 

 Relief
 

 Judge Kaye’s motion to dismiss the complaint [D.E. 11] is DENIED. Because the gag order entered by Judge Kaye in
 
 Engle
 
 is facially unconstitutional and is unsupported by the record, the newspaper publishers’ emergency motion for a preliminary injunction [D.E. 4] is GRANTED. Judge Kaye is enjoined from enforcing the gag order.
 

 [1]
 

 . Cases decided by the former Fifth Circuit before October 1, 1981, and cases decided after that date by Unit B of the former Fifth Circuit are binding precedent in the Eleventh Circuit.
 
 See Bonner v. City of Prichard,
 
 661 F.2d 1206, 1209 (11th Cir.1981)
 
 (en banc); Stein v. Reynolds Securities, Inc.,
 
 667 F.2d 33, 34 (11th Cir. 1982).
 

 [2]
 

 . Because
 
 Engle
 
 is a state court, action, the Seventh Amendment is not implicated in this case.
 
 See Colgrove v. Battin,
 
 413 U.S. 149, 170 n. 4, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973).